**Michael McGEE, Appellant,**

v.

**Debra Jane McGEE, Appellee.**

No. 08–82–00221–CV.

Court of Appeals of Texas,
El Paso.

April 27, 1983.
Rehearing Denied June 8, 1983.

Tom McCall, Stephen C. Kiser, Midland, for appellant.

William B. Smith, Midland, for appellee.

Before STEPHAN F. PRESLAR, C.J., and WARD and OSBORN, JJ.

## OPINION

OSBORN, Justice.

Michael McGee appeals from an order changing his visitation rights with his three minor children. We affirm in part and reverse and render in part.

Michael McGee and Debra Jane McGee (now Brown) have three minor children. The oldest boy was born in Oklahoma while Michael was in medical school. The two youngest children were born in Mississippi while Michael was completing a residency in medicine. In February, 1980, Debra filed for a divorce in Mississippi and about the same time she and the three minor children moved to Midland, Texas. Michael completed his residency and moved to Oklahoma City in 1980, and has practiced medicine there since that time. The Mississippi divorce was not granted until May 18, 1981. Based upon an agreement of the parties, it awarded custody of the three children to Debra and gave Michael extensive visitation rights which included every other weekend, every Father's Day weekend, every other Easter holiday season, five days at every other July 4th holiday season, every other Labor Day weekend, five days at every other Thanksgiving holiday season, seven days at every other Christmas holiday season and seven days at every other New Year's holiday season and in addition a period of six weeks during the summer, although the summer visitation with the youngest child, a daughter, were limited to two different one-week periods until she reached four years of age.

In April, 1982, Debra filed a petition in the district court of Midland County to Modify the Divorce Decree and sought to reduce the visitation rights to the school spring break period of even-numbered years, the Thanksgiving holidays of odd-numbered years, a week at Christmas on even-numbered years and one week during the summer until each child completed one year of school and then two weeks each summer.

Michael filed a special appearance and objected to the jurisdiction of the court. After hearing evidence in support of the motion, the court overruled the plea to its jurisdiction. The first four points of error assert the trial court erred in overruling Appellant's plea to the jurisdiction and in the findings made to support the court's order.

The evidence established that Michael was not a Texas resident and the children were not conceived in Texas and were not in this State as a result of the acts or directions or with the approval of Michael. We conclude that Section 11.051 of the Texas Family Code is not applicable and could not be used as a basis for acquiring jurisdiction over Michael in this case.

But, we conclude the trial court did acquire subject matter jurisdiction over the children under Section 11.045 of the Texas Family Code, and Michael was afforded due process by reason of the non-resident citation and the hearing at which he appeared on the merits of the motion. At the time these proceedings were commenced, the principal residence of the children was in Midland and the mother who had custody under the divorce decree was also a Texas resident. We conclude jurisdiction was acquired over the children under Section 11.-045(a)(1)(A) and (B) although the court did not have jurisdiction to enter a personal judgment against Michael. *Kulko v. Superior Court of California,* 436 U.S. 84, 98 S.Ct. 1690, 56 L.Ed.2d 132, reh. den., 438 U.S. 908, 98 S.Ct. 3127, 57 L.Ed.2d 1150 (1978); *In the Interest of M.S.B., D.G.B. and K.R.B.,* 611 S.W.2d 704 (Tex.Civ.App.—

San Antonio 1980, no writ); *Perry v. Ponder,* 604 S.W.2d 306 (Tex.Civ.App.—Dallas 1980, no writ). Points of Error Nos. One through Four are overruled.

The remaining points of error attack the order of the trial court which changed Michael's visitation rights and the court's findings in support of that order. At the outset, we are confronted with the full faith and credit provisions of the Parental Kidnapping Act of 1980 (PKPA), 28 U.S.C.A. 1738A. Dorsaneo, Due Process, Full Faith and Credit, and Family Law Litigation, 36 Sw.L.J. 1085 (1983); Weintraub, Affecting the Parent-Child Relationship without Jurisdiction over Both Parents, 36 Sw.L.J. 1167 (1983); Solender, Family Law: Parent and Child, 36 Sw.L.J. 155 (1982); Katz, Child Snatching—The Legal Response to the Abduction of Children (ABA 1981); Hoff, Schulman and Volenik, Interstate Child Custody Disputes and Parental Kidnapping: Policy, Practice and Law (1982).

This federal statute provides that the "authorities of every State shall enforce according to its terms, and shall not modify except as provided in subsection (f) of this section, any child custody determination made consistently with the provisions of this section by a court of another State." Subsection (f) does permit a modification of another state's order if (1) the state seeking to make the modification has jurisdiction under the PKPA jurisdiction scheme and under its own state law and (2) the other state which made the decree to be modified either no longer has original or continuing jurisdiction under the PKPA and its own law, or it retains jurisdiction, but declines to exercise it. Smith, 1982 Advanced Family Law Course, Vol. 1, A–18 et seq.; Weintraub, Judicial Jurisdiction to Affect Status and Full Faith and Credit to Status Decrees, 1982 Advanced Family Law Course, Vol. 1, I–8, 9.

The Supreme Court of our neighboring state has written more extensively on the effect of this federal legislation than any other, and its decisions are very instructive on application of the federal law to state modification orders. See: *Olsen v. Olsen,* 98 N.M. 644, 651 P.2d 1288 (NM 1982); *Tufares v. Wright,* 98 N.M. 8, 644 P.2d 522 (NM 1982); *Belosky v. Belosky,* 97 N.M. 365, 640 P.2d 471 (NM 1982); *State ex rel. Valles v. Brown,* 97 N.M. 327, 639 P.2d 1181 (NM 1981). For an analysis of three of these cases, see: Coombs, Custody Conflicts in the Courts: Judicial Resolution of the Old and New Questions Raised by Interstate Child Custody Cases, XVI Family Law Quarterly 251 at 268 (Fall 1982).

To begin with, we conclude that the Mississippi decree was made consistently with the provisions of the PKPA because all parties and the children were residents of that State at the time the divorce proceedings were commenced and the court which entered the decree had jurisdiction of both parties and the subject matter of the suit. 28 U.S.C.A. 1738A(d).

■ As to the first requirement of subsection (f), Texas does have jurisdiction under both the federal requirement and the Texas law. As previously noted, a Texas court has original jurisdiction of a suit affecting the parent-child relationship where this State is the principal residence of the child at the time the proceeding is commenced, or was the principal residence of the child at any time during the six-month period before the proceeding was commenced, and a parent resides in this State at the time the proceeding is commenced. Section 11.045(a)(1), Texas Family Code. The facts in this case are sufficient to meet either of those alternatives. These same facts satisfy the requirements of paragraph (c)(2)(A)(i) of Title 28 U.S.C.A. 1738A.

Next, we turn to the second requirement of subsection (f) to decide whether Mississippi has either original or continuing jurisdiction under its original decree. There is no indication that that State has declined to exercise jurisdiction. Subsection (d) provides:

The jurisdiction of a court of a State which has made a child custody determination consistently with the provisions of this section continues as long as the requirement of subsection (c)(1) of this section continues to be met and such State

remains the residence of the child or of any contestant.

Even if we assume Mississippi has jurisdiction under the law of that State, the second requirement was shown not to exist because that State did not remain as the residence of the children or of any contestant. All had changed residence even before the divorce was granted. Thus, we conclude that the second requirement of subsection (f) was also met and the Texas court was authorized, under the federal statute, to modify the Mississippi decree.

We now turn to those points of error which contend the trial court erred in changing the father's visitation rights. That order reduced visitation to one weekend per month, shortened visitation periods during holiday seasons, provided for visitation during spring break from school and reduced summer visitation periods to four weeks for the oldest boy, two weeks for the youngest boy until he is ten and then provided for four weeks and reduced the summer visitation with the girl to one week until she is six years old, two weeks thereafter until she is ten years old and then four weeks each year. In this case, most of the testimony involved the emotional state of the children following the long summer visits with their father and most of it was concerned about the two younger children. The only evidence of change of conditions established that the mother had remarried and the children were upset both before and after the 1981 summer visits.

Section 14.08 of the Texas Family Code sets forth the standards for the trial court to use in deciding whether to modify a prior order. A prior order may be modified "if the circumstances of the child or a person affected by the order or portion of the decree to be modified have materially and substantially changed since the entry of the order or decree." Of course the best interest of the child is always a primary consideration of the court in any case involving access to the child. Section 14.07(a), Texas Family Code.

■ Prior to the adoption of the Family Code, a visitation order could be changed simply because the order was unworkable or inappropriate. *Rodgers v. Williamson*, 489 S.W.2d 558 (Tex.1973); *Boney v. Boney*, 458 S.W.2d 907 (Tex.1970). But, since the adoption of the code most courts have held that, as a general proposition, a substantial and material change must be shown before a visitation order may be modified. *Kelly v. Novak*, 606 S.W.2d 25 (Tex.Civ.App.—Houston [1st Dist.] 1980, no writ); *In the Interest of C.E.B.*, 604 S.W.2d 436 (Tex.Civ.App.—Amarillo 1980, no writ); *Little v. Little*, 590 S.W.2d 620 (Tex.Civ.App.—Tyler 1979, no writ); *Files v. Thomasson*, 578 S.W.2d 883 (Tex.Civ.App.—Houston [14th Dist.] 1979, no writ); *Hanna v. Turner*, 556 S.W.2d 866 (Tex.Civ.App.—Corpus Christi 1977, no writ); *Howard v. Pullicino*, 519 S.W.2d 254 (Tex.Civ.App.—Austin 1975, no writ).

■ Although the remarriage of one of the spouses may be a material change in a custody case, we do not believe it is such a material change, even as in this case where it is a material benefit to the children, as to authorize a court to reduce visitation rights of the non-custodial spouse. Thus, the issue boils down to whether the evidence establishes a material and substantial change which results from the emotional condition of the children immediately before and after the Appellant's exercise of his visitation rights. We conclude that as to the oldest boy there is no proof of a substantial change. The evidence showed that he was in fact, by agreement of the parties, living with his father and there was no emotional change resulting from the exercise of visitation rights.

As to the two youngest children, we conclude that there was some evidence from which the trial court could determine a substantial change, but only as it related to the exercise of long visitation rights during the summer. There is no evidence about emotional problems during short visitation periods such as on the weekends and holidays. Therefore, we affirm the trial court modification order insofar as it limits visitation rights of the two youngest children during the summer vacation and in all other

respects the modification order is reversed and judgment rendered for Appellant.