**Joyce M. SERAVO**

v.

**Anthony M. SERAVO.**

**No. 85–37–Appeal.**

Supreme Court of Rhode Island.

May 26, 1987.

---

Alan T. Dworkin, Kerry Rafanelli, Dworkin & Brady, Warwick, for plaintiff.

Richard A. Boren, Lipsey & Skolnik, Ltd., Providence, for defendant.

## OPINION

SHEA, Justice.

This matter is before the Supreme Court following an appeal by the father, Anthony Seravo, from an order of the Family Court that denied him visitation rights with his son. The child was in the exclusive custody of his mother, Anthony's former wife, under the terms of an agreement between the parties that was incorporated into the divorce decree. We affirm.

This proceeding began when the father filed a motion in Family Court to adjudge the mother in contempt for refusing to allow him to visit with his son. The mother countered with an objection and a motion to terminate the father's visitation rights. She asserted, as grounds for her motion to terminate, that the father had sexually assaulted the child in April of 1983 and had otherwise physically and verbally abused the child. On April 10, 1984, the matter was referred to the Department for Children and their Families for a full investigation concerning the visitation rights of the father.

At the hearing before the trial judge that began in November 1984, the father testified that the mother had initially complied with the agreement on visitation. However, after she accused him of sexually molesting the child in April 1983, her willingness to cooperate with the visitation schedule ended.

The incident is alleged to have occurred at the former marital domicile during a visit when the father took the child into the cellar because he "enjoyed playing there." The child was one and a half years old at that time. After about twenty-five minutes he brought the child upstairs to his mother because the child had had a bowel movement, some of the contents of which had spilled out of the child's diaper onto the father's hand and clothes. The child's pediatrician treated the child the next day, on April 20, 1983 for rectal bleeding from a tear in the mucous lining of the rectum. He said that the tear could have been caused by either severe constipation or insertion of a foreign object. There was apparently no report of severe constipation.

The mother testified that the presence of blood at the child's rectum the day after the alleged assault was what prompted her to seek medical advice. She testified that the child was restless and insisted on being held after the father's visit had ended. She also testified that the father frequently made fun of and teased the child, and that the child complained about this treatment. Nevertheless, she said, as long as the father's visitations with the child were supervised and infrequent she would not object.

The father testified that following the incident in the cellar, at the mother's request, he agreed to a modified visitation schedule. Later the mother said that the child cried and had nightmares after his visits with the father. For this reason she would not allow the father to see the child for a "few months." At that time she gave the father a letter from her attorney threatening prosecution for sexual assault on a minor unless he acceded to her wishes. He did not see his child again until visiting rights were ordered in an interim order entered by the Family Court in June 1984.

During cross-examination the father acknowledged that the initial agreement for visitation rights, entered into at the time of the divorce, required that the visits be supervised until the child reached an age at which he could talk and express himself verbally. The father suggested that the mother's insistence on supervised visitation was probably because he had left the child unattended on a dressing table while he spoke to her on the telephone. He admitted that he kept pornographic books and films, some of which contained child pornography, in the cellar. He admitted that his interest in such things was of concern to the mother when the supervised visitation rights were agreed to. He denied possessing materials exclusively devoted to child pornography, insisting that some such materials were contained in books he purchased that addressed sex on other levels. He admitted having "eight or ten films" that were pornographic in nature and possessing "books that showed animal's intercourse or oral copulation."

A psychologist specializing in child and family psychology was of the opinion that the child's reactions to questions about the incident were extreme, indicating a traumatic experience. However, she observed that interaction between the father and the child seemed normal. She said, however, that it was impossible to assess their relationship fully in an artificial setting.

An employee of the Department for Children and their Families testified that she investigated the alleged assault of the child but was unable to substantiate the charge. She too observed normal interaction between the father and the child.

At the conclusion of the hearing the Family Court judge rendered his decision. He was convinced that the father was an unfit parent. The judge referred specifically to the father's admission to possession and use of pornographic books, magazines, and films. The judge believed that the father had committed the assault on the child, and he believed the child was still traumatized by the assault. For these reasons he denied the father's motion to adjudge the mother in contempt. He found, rather, that she was justified in her noncompliance with the father's visitation rights provided for in the divorce decree. The trial judge also denied all visitation rights to the father.

On appeal the father asserts that he has been denied due process by having his visitation rights terminated at a hearing that was to address only a modification of those rights. He asserts that the trial judge's decision effectively terminated his parental rights that, he argues, cannot occur without a hearing on his fitness as a parent under the due process clause of the Fourteenth Amendment of the United States Constitution. He asserts that he had no notice that his fitness as a parent was an issue during the hearing. However, the record simply does not support the father's argument.

■ First of all, his parental rights have not been terminated. Such an event could occur only under G.L.1956 (1981 Reenactment) § 15–7–7, as amended by P.L. 1983, ch. 232, § 1, which provides the authority and the grounds for which parental rights may be terminated. What did occur in this case was a termination of the father's visitation rights until he can prove a substantial change in circumstances warranting a modification of the earlier decree. The Family Court's jurisdiction to deny visitation rights is clear under G.L.1956 (1981 Reenactment) § 15–5–16, as amended by P.L.1981, ch. 320, § 1, which provides in relevant part:

"In regulating the custody of said children the court shall provide for the reasonable right of visitation by the natural parent not having custody of the children except upon the showing of cause why said right should not be granted. * * * In all hearings regarding denial of visitation, the court shall make findings of fact."

*See also Ryan v. DeMello,* 116 R.I. 264, 267, 354 A.2d 734, 736 (1976) (since right of visitation is incident to parenthood status, Family Court regulates visitation rights in divorce proceeding).

■ The father's claim of insufficient notice has no merit. In response to his mo-

tion to adjudge her in contempt, the mother filed a motion praying that the father's visitation rights be denied and specifically alleging circumstances justifying that drastic remedy. A hearing was held to determine the sole issue of whether the father's visitation rights should be increased, decreased, or suspended. At that hearing he had every opportunity to put forth evidence probative of his fitness as a parent to visit his child.

■ The father also argues that the trial judge erred in terminating visitation privileges because his findings were not based on competent evidence. He argues in the alternative that even if there was competent evidence to support the finding of sexual assault, the termination of his visitation rights was an abuse of discretion. We cannot agree.

We note that the findings of the trial judge will not be disturbed on appeal unless the trial judge misconceived or overlooked material evidence or was clearly wrong. *Veach v. Veach*, 463 A.2d 508, 510 (R.I.1983).

The trial judge found that the father had sexually assaulted the child and that he was unfit to have any relationship with the child. The testimonies of the mother and the father as well as the testimony of the psychologist that the child was suffering from trauma were competent evidence to support those findings.

We acknowledge that the testimony of the father's physical and mental abuse of the child was to some extent contradicted by the psychologist and the social worker, both of whom observed normal interaction between the father and the child. However, we have said repeatedly that the findings of a trial judge, sitting without a jury, are entitled to great weight, and on this record, he was not clearly wrong. *Matracia v. Matracia*, 119 R.I. 431, 436, 378 A.2d 1388, 1390 (1977).

A variety of approaches to the modification of visitation awards has been applied throughout the country. *See generally* 2. J. Atkinson, *Modern Child Custody Practice*, § 9.12 at 466–67 (1986). Atkinson notes that some states require a showing of a change in circumstances before visitation can be modified. *Id.* at 466; *see, e.g., Hooper v. Hooper*, 428 So.2d 115, 117 (Ala. Civ.App.1983); *Olsen v. Olsen*, 98 N.M. 644, 647, 651 P.2d 1288, 1291 (1982); *Muraskin v. Muraskin*, 336 N.W. 2d 332, 336 (N.D.1983); *McGee v. McGee*, 651 S.W. 2d 891, 894 (Tex.Ct.App.1983). Several states apply a "best interest" analysis without requiring a special showing of change or harm. *See, e.g., In re Marriage of Adamson*, 626 P.2d 739, 740 (Colo.Ct.App.1981); *Bury v. Bury*, 312 Pa.Super. 393, 396, 458 A.2d 1017, 1018 (1983); *In re Stuck*, 291 Pa.Super. 61, 63, 435 A.2d 219, 220 (1981). The "best interest" approach is followed by the Uniform Marriage and Divorce Act. 9A U.L.A. § 407(b) at 207–08 (1979).

■ We agree that the trial judge's prime concern in visitation cases is the child's best interests. In *Raymond v. Raymond*, 165 Conn. 735, 345 A.2d 48 (1974), the Connecticut Supreme Court stated:

"A parent's privilege of visitation of children whose custody has been awarded to the other parent in a divorce action * * * is not an absolute right but one which is dependent on what is for the best interests of the children even though such visitation rights may be restricted or effectively terminated. * * * A contest relative to custody, such as visitation rights, is not one primarily to determine the rights of the respective parties but rather a determination of the best interests of the child." 165 Conn. at 741, 345 A.2d at 52.

Noting the *Raymond* decision and several others, one commentator succinctly identified the proper focus of a court when confronted with the issue of modification of visitation:

"It is undisputed that in matters concerning the custody and visitation of children, the court is guided in its determination by a consideration of the best interests of the child. Even a parent's natural right of visitation must yield to the child's best interests, and visitation becomes primarily a right of the child and only secondarily the right of the parent."

926

3 *Child Custody and Visitation Law and Practice,* § 16.02[2] (J. McCahey ed. 1986).

When reviewing a trial judge's decision in custody-modification proceedings, this court will examine the record to determine if there is an abuse of discretion. *Veach v. Veach,* 463 A.2d at 510. The same standard of review is proper in a visitation proceeding. *See Paolino v. Paolino,* 420 A.2d 830, 834 (R.I.1980) (exercise of discretionary power in visitation proceeding will not be disturbed unless power improperly exercised or abused).

It has been frequently stated that visitation rights are to be strongly favored and should not be denied absent extreme circumstances showing that the child's physical, mental, or moral health will be endangered by contact with the noncustodial parent. *Jackson v. Jackson,* 461 A.2d 459, 460 (D.C.Ct.App.1983); *Wilke v. Culp,* 196 N.J. Super. 487, 496, 483 A.2d 420, 424–25 (1984); *Katz v. Katz,* 97 A.D. 2d 398, 398, 467 N.Y.S.2d 223, 224 (1983). In the case before us we conclude that the trial judge's findings that the child had been sexually assaulted by the father, that the child was still traumatized by the event, and that the father was unfit as a parent justify the remedy given. Consequently, we conclude that the trial judge did not abuse his discretion in terminating the father's visitation rights.

For these reasons the father's appeal is denied and dismissed, the decree appealed from is affirmed, and the papers of the case are remanded to the Family Court.

Chief Justice FAY, did not participate.