Sylvia Carolina **AFRICANO**

v.

**Frank R. CASTELLI.**

No. 2002–158–Appeal.

Supreme Court of Rhode Island.

Dec. 19, 2003.

---

John B. Harwood, Esq., Pawtucket, for Plaintiff.

John D. Lynch, Esq., Union City, for Defendant.

Present: WILLIAMS, C.J., FLANDERS, GOLDBERG, FLAHERTY, and SUTTELL, JJ.

## OPINION

PER CURIAM.

The defendant, Frank R. Castelli (father), appeals from an order of the Family Court suspending his right to visit with his daughter, Francesca Africano (Francesca). The father contends that the trial justice did not comply with the directives of this Court in *Africano v. Castelli*, 740 A.2d 1251 (R.I.1999) (*Africano I*). The plaintiff, Sylvia Carolina Africano (mother), cross-appeals from orders denying several of her motions concerning the release of passports, payment of uninsured medical expenses, payment of attorney's fees, and an increase of child support. The mother also cross-appeals from orders suspending the father's duty to pay child support, requiring her and the child to live within fifty miles of Rhode Island, requiring her to pay a $1,500 counsel fee to the father, and awarding temporary legal custody of Francesca to the Department of Children, Youth and their Families (DCYF). She contends that the court violated her due-process rights when it suspended child-support payments to her without first conducting a hearing. She also contends that the trial justice violated her constitutional right to travel by continuing to hold her and her daughter's passports in the custody of the court and by limiting Francesca to residing within fifty miles of Rhode Island. Lastly, she argues that the trial justice erred in *sua sponte* bringing DCYF into the case.

The factual background for this dispute is set forth in *Africano I*. There, we remanded the case "to the trial justice to set up a reasonable supervised visitation schedule forthwith without the counseling requirement as a precondition to visitation. Whether the visitation should proceed beyond the point of supervised visitation is a matter left entirely to the discretion of the trial justice." *Africano I*, 740 A.2d at 1254. We noted that the evidence did not indicate that supervised visitation with the defendant would endanger Francesca's "physical, mental, or moral health." *Id.*

On December 15, 1999, the Family Court appointed a guardian ad litem to review *Africano I*, interview all parties, and make a recommendation about how to structure the supervised visitation that we ordered. The report of the guardian ad litem, dated December 20, 1999, noted that her role was not to assess whether visitation was in Francesca's best interest, but to recommend how to implement the supervised visitation in a way that minimized trauma to the child. She recommended that an independent, court-appointed child psychologist supervise visitation between the father and Francesca. She also recommended that a different psychologist—not one who already was involved with the case—provide the necessary therapy for Francesca. Lastly, she recommended that the court review the visitation scheme at regular intervals or upon the request of the court-appointed psychologist.

The Family Court set up a supervised visit between defendant and Francesca on December 15, 1999. By all accounts, the visit did not go well. Francesca clung to the court-appointed supervisor and cried throughout the visit. A Family Court trial justice personally witnessed the visitation and noted at a later hearing that the visitation lasted seven minutes and Francesca

appeared visibly shaken by the experience. The trial justice said that Francesca refused to look at defendant and was generally uncommunicative. On December 20, 1999, the court held a hearing on the father's motion to hold the mother in contempt for moving to California in violation of an earlier order in the case requiring her to stay within fifty miles of Rhode Island. At the hearing, the father's counsel conceded that awarding custody of Francesca to the father might be too traumatic for the child, so he instead requested that DCYF be awarded custody. The father's counsel suggested that the mother was obstructing visitation and had "programmed" the child to have a negative reaction against the father. The mother's counsel averred that Francesca's wishes and her best interests were controlling on the visitation issue. The Family Court imposed a conditional order of contempt against the mother and ordered her to be incarcerated at the Adult Correctional Institutions (ACI) unless she appeared with Francesca on January 4, 2000. The judge also declined at that time to decide various motions of the mother on child support, relocation, and reimbursement for expenses.

On January 4, 2000, the mother appeared before the Family Court, but Francesca did not appear. The mother testified that Francesca cried and refused to come to Rhode Island. The mother also said that when she went to California she never intended to move there permanently; rather, she went there only temporarily until she received a decision on her motion to relocate. The mother also revealed for the first time that Francesca was not even then residing in California; she apparently was visiting relatives in Amman, Jordan. Again, the trial justice found the mother to be in willful contempt of an order prohibiting her from moving outside of a fifty-mile radius of Rhode Island. He sentenced her to serve "one day at a time" at the ACI until she deposited $10,000 with the Family Court to cover the expenses of Dr. Richard Solomon and the attorneys to travel to California to determine whether visitation should take place.

Thereafter, the father objected to having Dr. Solomon conduct such an investigation. On January 27, 2000, the father petitioned this Court to issue a writ of certiorari. On March 2, 2000, we issued an order stating that "[t]he petition for writ of certiorari is denied without prejudice to petitioner renewing his petition in the event the mandate of this Court [contained in *Africano I* ] is not implemented within a reasonably expeditious period of time." At a hearing on March 10, 2000, the Chief Judge of the Family Court said that he believed this Court's order required him to set a visitation schedule. He then ordered the mother to bring her child for visitations scheduled on April 17, 19, 21, 2000. Doctor Solomon would supervise the visitations. If the mother failed to comply with the order she would be found in willful contempt and subject to incarceration in the ACI, with her child being placed in the custody of the father, with possession of the child going to DCYF. At the hearing it also was noted that the mother had turned over both her own passport and Francesca's passport to the Family Court. The mother's counsel continued to argue that the prospect of further visitations with her father traumatized Francesca and that the child believed that her father had harmed her.

The parties conducted supervised visits on the three above dates in April 2000. According to the mother, Francesca was non-responsive during the visits, cried, and curled herself up into a ball. Apparently Dr. Solomon related these observations at a hearing held in the Family Court on

April 21, 2000. The court also scheduled visitations for the summer of 2000. These visitations, however, did not take place. On July 21, 2000, the court held a hearing on the issue of summer visitations. Jaime Nero, a coordinator of supervised visits for the Family Court, testified that the mother told her by phone that Francesca did not want to see defendant. Therefore, the visit scheduled for July 19, 2000, did not occur. The mother testified at the hearing that her daughter currently was staying with her uncle's family in Florida for the summer. The mother said that Francesca refused to leave the car when she brought her to the Family Court for a scheduled visit in May 2000. She testified that her daughter repeatedly refused to see the father.

The father argued that the mother was obstructing visitation and that custody should be changed to him, with his sister having actual possession of Francesca. The mother countered that visitation was not in the best interests of Francesca. She also pointed out that Dr. Solomon found that Francesca would become physically ill even at the prospect of visiting the father.

After the hearing, the trial justice awarded temporary custody of Francesca to DCYF. He ordered DCYF to set up a visitation schedule between Francesca and the father, but he returned Francesca to the possession of the mother. The trial justice also asked DCYF to investigate whether a dependency or neglect petition should be filed. Issues concerning child support and other payments would "remain status quo." In addition, the trial justice ordered the mother to pay $1,500 of the father's counsel fees as a consequence of her failure to bring her child for visitation and because she allowed the child to reside in Florida.

On December 1, 2000, the court held a hearing on the issue of visitation. Laura Ryan, a social worker, testified that Francesca experienced a negative reaction to visiting with the father. She also testified that Francesca was afraid of her father. She believed that future visitations would be harmful. The trial justice did not make a decision at the conclusion of the hearing, but he questioned whether DCYF might be in contempt for failing to set up visitations.

After holding another hearing on January 22, 2001, the trial justice issued a written decision on the issues of custody and visitation. He found that the mother had obstructed the visitation process; that Francesca suffered from post-traumatic stress disorder; that over the past fifteen months he had tried to facilitate visitation; that, as expert witnesses had confirmed, Francesca's contacts with the father were endangering her health and putting her at risk for self-injurious behavior; and that, based on "the conditioning of the child and the stress under which Francesca lives her daily life caught between intransigent parents," visitation with the father could not proceed any farther at that time. Therefore, he ordered the suspension of visitation, terminated DCYF's involvement in the case, and decreed that custody and placement revert to its status before November 16, 1999, including the requirement that the child not move more than fifty miles from Rhode Island. He also suspended the father's obligation to pay child support as a consequence of the mother's obstructionist conduct. Finally, he concluded that all previous orders not inconsistent with the instant order—including the order impounding the passports—were to remain in full force and effect.

Later, the parties submitted additional memoranda on several outstanding mo-

tions filed by both sides. The mother's motions included the following: a motion to release her and Francesca's passports, a motion for payment of uninsured medical expenses, a motion to hold defendant in contempt for failure to pay uninsured medical expenses, a motion for payment of attorney's fees, a motion to hold the father in contempt for failure to pay attorney's fees, and a motion to modify judgment. The father moved for clarification of the court's January 26, 2001 order and he also moved to hold the mother in contempt for failure to pay counsel fees.

The court issued a written decision on January 22, 2002. The trial justice noted that, as he had previously found in January 2001, the mother had attempted to relitigate issues finalized by this Court and had obstructed visitation. He found that the mother was responsible for the failure to effectuate supervised visitation between Francesca and her father. As a result, he denied the mother's motions, based on her willful disregard of previous orders scheduling visitation. He also ordered the mother to satisfy the order of outstanding attorney's fees in the amount of $1,500. All other orders would remain "status quo." An order implementing this decision was entered on February 14, 2002. The father filed a timely notice of appeal on March 6, 2002, and the mother filed a timely cross-appeal on March 20, 2002.

On appeal, the father argues that the court erred in suspending visitation because the order did not comply with the supervised-visitation mandate of *Africano I*. The father suggests that the trial justice gave undue weight to the wishes of the child on visitation.

In response, the mother maintains that the trial justice properly suspended visitation because competent evidence indicated that visitation was not in the best interests of the child. The mother contends that the trial justice did not abuse his discretion in terminating the child's visitation with the father. To support her cross-appeal, she argues that the trial justice improperly terminated child support, denied her request for past-due medical expenses, and denied her motion for attorney's fees without affording her a hearing. The mother contends that these rulings violated her due-process rights. The mother also insists that the trial justice erred in terminating child support because he used the termination to punish her, rather than analyzing what was in the child's best interest. She additionally argues that the trial justice erred in refusing to release her and Francesca's passports and in ordering Francesca to reside within fifty miles of Rhode Island. The mother asserts that these measures violated her constitutional right to travel. The mother further complains that the Family Court orders appear to be focused improperly on punishing her. Finally, the mother avers that the trial justice erred in *sua sponte* bringing DCYF into the case, contending that the trial justice did not initiate the proper procedure in commencing a DCYF investigation and that she did not receive proper notice for a change in custody to occur.

 The Family Courts jurisdiction to deny visitation rights is clear pursuant to G.L.1956 § 15–5–16(d)(1).[1] With regard

---

1. General Laws 1956 § 15–5–16(d)(1) provides:

In regulating the custody of the children, the court shall provide for the reasonable right of visitation by the natural parent not having custody of the children, except upon the showing of cause why the right should not be granted.

Section 15–5–16(e) provides:

In all hearings regarding denial of visitation, the court shall make findings of fact.

to the issue of visitation, " '[t]he paramount consideration in cases involving visitation rights or custody disputes is the best interests of the child.' " *Pacheco v. Bedford,* 787 A.2d 1210, 1213 (R.I.2002) (per curiam); *see also Riedeman v. Petrella,* 828 A.2d 538, 540 (R.I.2003) (mem.). " 'If the Family Court has properly considered what custody arrangements are in the best interests of the child[], [this Court] will not disturb such a discretionary decision.' " *Pacheco,* 787 A.2d at 1213. The same discretion applies to decisions pertaining to modification of visitation. *Seravo v. Seravo,* 525 A.2d 922, 926 (R.I.1987). "Visitation rights are to be strongly favored and will be denied only in an extreme situation in which the children's physical, mental, or moral health would be endangered by contact with the parent in question." *Suddes v. Spinelli,* 703 A.2d 605, 607 (R.I.1997) (citing *Seravo,* 525 A.2d at 926).

■ In assessing the best interests of the child, the trial justice should consider: (1) the wishes of the child's parents; (2) the reasonable preference of the child (if he or she is of sufficient intelligence and understanding); (3) the interaction and relationship of the child to the parents; (4) the child's adjustment to his or her home, school and community; (5) the mental and physical health of the individuals involved; (6) the stability of the child's home life; (7) the moral fitness of the parents; and (8) the willingness of each parent to facilitate a close relationship between the child and the other parent. *Pettinato v. Pettinato,* 582 A.2d 909, 913–14 (R.I.1990). No one factor is determinative; rather, the trial justice should consider a combination of

See also *Ryan v. DeMello,* 116 R.I. 264, 267, 354 A.2d 734, 736 (1976) (because the right of visitation is incident to parenthood status, Family Court regulates visitation rights in divorce proceeding).

and an interaction among all the relevant factors. *Id.* at 914. Any weight given to a child's preference in a custody matter is committed to the sound discretion of the trial justice after attempting to carry out a regimen of supervised visitation. *Patterson v. Patterson,* 792 A.2d 746, 748 (R.I. 2002) (mem.).

In *Seravo,* 525 A.2d at 926, we upheld a termination of visitation because the trial justice found "that the child had been sexually assaulted by the father, that the child was still traumatized by the event, and that the father was unfit as a parent." This Court held that even though evidence of the father's abuse was, to some extent, contradicted, the findings of a trial justice sitting without a jury are entitled to great weight and will not be overturned unless he or she was clearly wrong. *Id.* at 925.

■ As in *Seravo,* there was evidence here that continued attempts at visitation with her father would jeopardize Francesca's mental and physical health, as well as her overall well-being. Like *Seravo,* this is a case involving a previous judicial finding of sexual abuse of the child in question by the parent seeking to obtain visitation.[2] Here, the Family Court attempted, on remand, to comply with this Court's mandate in *Africano I* by setting up supervised visitations between the father and Francesca. The court was able to arrange only four visitations. After implementing these visitations, however, it became apparent that Francesca was experiencing severe trauma every time she had contact with the father—or even when the court scheduled visitation with the father. Also, as in *Seravo,* this trial justice heard evidence from both expert witnesses and the moth-

2. This Court in *Africano I* did not overturn that finding.

er that the visits with the father had traumatized the child. Some evidence also indicated that the visits had a harmful effect on Francesca's physical health.

The trial justice heard evidence that Francesca, who was eleven years old at the time, expressed a strong desire not to see the father. There was evidence that Francesca had virtually no relationship with him. She called her stepfather "my father" and referred to her father by his first name. Based on the above factors, it appears to us that the trial justice did not abuse his discretion in suspending visitation after attempting to comply with the supervised visitation that we ordered in *Africano I.*

■ The mother also has cross-appealed with respect to several issues. The first issue concerns the trial justice's suspension of child support. Pursuant to G.L. 1956 § 14–1–52(b),

> "Every person aggrieved by any decree, judgment, order, decision or verdict of the family court relating to modification of * * * child support * * * may, within twenty (20) days after entry of the decree, judgment, order, decision, or verdict, seek review of questions of law in the supreme court by petition for writ of certiorari in accordance with the procedure contained in this chapter."

This Court reviews orders modifying child support by writ of certiorari, not appeal, even when such orders have been bundled with other issues. *Codd v. Barrett,* 798 A.2d 954, 956 (R.I.2002) (per curiam). Only in extreme circumstances will this Court depart from this procedure. *Id.* For this reason alone, we decline to reach the merits of this order because it is not reviewable on appeal, only by filing a petition for a writ of certiorari.

■ The mother also contests the award of attorney's fees to the father and the denial of her own claims for payment of uninsured medical expenses and attorney's fees. " '[T]he inherent power of courts to punish for contempt of their orders has long been recognized by our jurisprudence.' " *Gardiner v. Gardiner,* 821 A.2d 229, 232 (R.I.2003) (per curiam). The trial justice, in his or her discretion, may impose an award of attorney's fees as a sanction for a party found to be in contempt of a court's order. *Id.* "The only restraint on the trial justice's discretion is that the award of an attorney's fee should be reasonably related to the extent and willfulness of the contempt." *Moran v. Rhode Island Brotherhood of Correctional Officers,* 506 A.2d 542, 544 (R.I.1986) (citing *Nelson v. Progressive Realty Corp.,* 81 R.I. 445, 451, 104 A.2d 241, 244 (1954)). This Court will not disturb a trial justice's decision in this respect, absent an abuse of discretion. *Marques v. Marques,* 741 A.2d 272, 273 (R.I.1999) (mem.). When the essential elements of the contempt have occurred outside the presence of the court, the contempt is indirect and the court must convene a separate hearing before imposing the contempt sanction. *See Peltier v. Peltier,* 120 R.I. 447, 449–50, 388 A.2d 22, 24 (1978).

It appears to us that the trial justice did not abuse his discretion in both granting attorney's fees to the father and in denying the mother's attempts to obtain reimbursement for uninsured medical expenses and attorney's fees. The court held a series of hearings in this matter. As a result of these hearings, the trial justice found that the mother "has obstructed visitation." He concluded that "based upon [the mother's] conduct and deliberate disregard for the Rhode Island Supreme Court's directive regarding visitation with [the father], her motions are denied." In light of the extent and willfulness of the mother's contempt in this case, the trial justice acted within his discretion in both

denying her motions and in awarding attorney's fees as a sanction.

In addition, the mother also alleges error in the trial justice's refusal to release her own passport and Francesca's passport, and in requiring the child to reside within fifty miles of Rhode Island. The furtherance of the best interests of the child can constitute a compelling state interest sufficient to override an unfettered constitutional right to travel. *E.g., In re Marriage of Robison,* 311 Mont. 246, 53 P.3d 1279, 1282–83 (2002). In our judgment, the extreme facts of this case warranted the trial justice's refusal to release the mother's and child's passport and his refusal to modify the limitation on the child's residency. The mother's apparent propensity to remove the child to distant locales provided a strong rationale for the court-imposed travel and residency restrictions, especially when, as here, the removals often thwarted court-ordered visitations. And even though visitation has been suspended, it is possible that it could resume in the not-too-distant future. Thus, these continued restrictions enhance the possibility that the father may be able to obtain visitation with his daughter in the future because, as a practical matter, it will be easier to arrange visits if the child is living and present in a nearby locale. For these reasons, the trial justice, therefore, did not err in denying the mother's motions as they pertain to continued restrictions on her and Francesca's travel and residency options.

Finally, the mother contends that the trial justice erroneously brought DCYF into the case. This issue, we conclude, is moot. A claim is moot if "events occurring after [its] filing have deprived the litigant of a continuing stake in the controversy." *Associated Builders & Contractors of Rhode Island, Inc. v. City of Providence,* 754 A.2d 89, 90 (R.I.2000) (per curiam); *see also Cicilline v. Almond,* 809 A.2d 1101, 1105 (R.I.2002) (per curiam). An assignment of error on appeal might nevertheless be reviewed if it is likely to recur in such a way as to evade review and if the issue is one of great public importance. *Fiore v. Town of South Kingstown,* 783 A.2d 944, 946 (R.I.2001). In this case, DCYF is no longer involved. The propriety of the trial justice *sua sponte* ordering DCYF to assume custody of Francesca appears not to be a continuing issue in the visitation/custody proceedings of this case. And any possible recurrence necessarily will involve different factual circumstances and considerations than those that obtained previously.

For these reasons, with respect to those orders and decrees that we have reviewed on their merits, we affirm the challenged orders and decrees of the Family Court in their entirety and remand this case to the Family Court. In the event that any motions are filed in the future that relate to Francesca or that implicate her interests, the court shall appoint a guardian ad litem, pursuant to G.L.1956 § 15–5–16.2(c), who shall, after conducting an appropriate investigation, report to the court concerning the child's best interests with respect to the motion in question.