Paula J. WATERS

v.

Charles F. MAGEE, Jr.

No. 2003–630–Appeal.

Supreme Court of Rhode Island.

July 12, 2005.

William F. Holt, Esq., Providence, for Plaintiff.

John D. Lynch, Jr., Esq., Warwick, for Defendant.

Present: WILLIAMS, C.J., GOLDBERG, FLAHERTY, SUTTELL, and ROBINSON, JJ.

## OPINION

PER CURIAM.

This case involves a custody dispute over the parties' two daughters, who are now five and six years old. The defendant, Charles F. Magee, Jr., appeals from a Family Court order granting sole custody of the children to the plaintiff, Paula J. Waters, setting forth a visitation schedule, ordering the payment of current and retroactive child support, and restraining him from assaulting, molesting, or otherwise interfering with the plaintiff in any manner until April 7, 2006.[1]

This case came before the Supreme Court pursuant to an order directing the parties to appear and show cause why the issues raised in this appeal should not summarily be decided. After hearing arguments of counsel and reviewing the materials submitted by the parties, we are satisfied that cause has not been shown.[2] Accordingly, we shall decide the appeal at this time. For the reasons hereinafter set forth, we affirm the order of the Family Court.

### Facts and Procedural History

The parties lived together in North Kingstown for approximately seven years until January 2002, during which time their two daughters were born. Shannon was born August 27, 1998, and Jillian was born December 11, 1999.[3]

On January 28, 2002, plaintiff filed a complaint for protection from abuse, and obtained an *ex parte* temporary restraining order against defendant as a result of an incident that had occurred five days earlier in which he clenched his fists at her. A hearing on the restraining order was held on February 8, 2002, in the Family Court, after which the hearing justice dismissed the *ex parte* restraining order, ruling that plaintiff did not meet her burden of proof in showing that she was in fear of imminent serious physical harm.

On the same day, plaintiff filed a miscellaneous petition in which she sought sole custody and physical possession of the two minor children, reasonable visitation for defendant on the condition that he attend anger management and parental counseling classes, and an order of child support. In addition, plaintiff requested that defendant be restrained from assaulting, or otherwise harassing her, that he be restrained from drinking alcohol before and during visitation with the children, and that he be required to secure all his firearms at a location not visited by the children. The defendant answered and counterclaimed, seeking joint custody and physical placement of the children, with reasonable rights of visitation for plaintiff, and mutual restraining orders. In April 2002, the parties entered into a temporary consent order in which they agreed to joint legal custody of the children, with plaintiff having care and control of the children on

---

1. In her bench decision the trial justice permitted communication by telephone concerning the children's visitation. This provision, however, is not reflected in the restraining order that subsequently was issued.

2. It is of note that plaintiff in this case did not submit a statement of the case, pursuant to Article I, Rule 12A of the Supreme Court Rules of Appellate Procedure.

3. In the record, Jillian's birthday also erroneously is given as December 6, 1999, and December 16, 1999.

Monday, Tuesday, and Wednesday after 5 p.m. until 7:15 a.m. the following morning, and all day on Friday until Saturday at 5 p.m. The defendant was awarded care and control of the children from 5 p.m. on Saturday until 5 p.m. the following Monday, every Tuesday and Wednesday from 7:15 a.m. until 5 p.m. and all day Thursday. The consent order also provided that "[c]hild support shall remain open at this time."

The trial on plaintiff's miscellaneous petition and defendant's counterclaim was held before a second justice of the Family Court between March 7 and April 7, 2003. The plaintiff testified that defendant physically and mentally abused her in front of her children. She conceded on cross-examination that the physical abuse by defendant Charles Magee occurred before February 2002, but said that the mental abuse had been continuing. The plaintiff also testified that before the children were born, defendant daily drank a "mid sized jug" of vodka. She acknowledged that defendant repeatedly sought help for his substance abuse problem in 1995 and 1998, but that his drinking would start again after a short while, and continued to occur after the children were born. Ms. Waters said that she observed defendant drink on numerous occasions between 1998 and 2002. She described finding full and empty beer bottles in the house before the couple separated. In addition, she recalled an incident when she and defendant attended a family wedding in November 2001. According to her, defendant drank vodka tonic at the wedding and became verbally abusive toward her. Although she acknowledged that the drink looked like Sprite, Ms. Waters said she confirmed it was alcohol by dipping her finger in it and tasting it.

The defendant admitted that when he drank alcohol he would consume two to eight beers or three to four vodka drinks per day, acknowledging that during one period he would consume a quart of vodka a day. He said, however, that the last time he drank any alcohol was in the summer of 1997. The defendant denied drinking alcohol at the wedding in 2001, and said that, instead, it was plaintiff who became intoxicated at the wedding because she had four to eight glasses of wine. The defendant testified that he had been depressed throughout the years and that he was at the time taking Ativan as a prescription medication. The defendant denied ever physically abusing Ms. Waters. He conceded, however, that he had yelled at her in the past. Mr. Magee currently is disabled because of a permanent knee injury he suffered while working at UPS in March 2000. He has not worked since March 2000, and has been receiving $480.11 per week in workers' compensation. At the time of the trial, he was living with his parents in North Kingstown. Before becoming disabled, he also worked as a private investigator in his father's company. He admitted that he owns one gun.

Since about November 2002, plaintiff has lived with her fiancé, Michael Comerford, a Providence police officer. She said that they plan to marry, and during the proceedings they moved together from her apartment in West Warwick into a house his parents own in Foster. Mr. Comerford had sole custody of a three-year-old daughter from a previous relationship. Ms. Waters testified that before her relationship with Mr. Comerford, she would pick up her children by herself at defendant's house. She asked Mr. Comerford, however, to come along because she felt safer with him around. Both parties testified that there has been a complete breakdown in communication between Ms. Waters and Mr. Magee, and that all information is now exchanged through Mr. Comerford.

The plaintiff testified to several incidents of harassment by defendant. She said that when she was hospitalized in April 2002, defendant called her hospital room so many times that her sisters had the nurses shut off the telephone. When she attempted to pick up her children after she was released, defendant refused to give them to her. She further said that on Christmas Eve 2002, when she arrived at defendant's house with Mr. Comerford to pick up the children, defendant called the police because her 2000 van did not have an inspection sticker. According to her, this incident was very upsetting to the children. The defendant admitted that he called the police about the inspection sticker on Christmas Eve, but he contended he was motivated by concern for his children's safety, and that he inquired whether it was possible to have the van towed. He further said that he was accompanied by the West Warwick police when he arrived at plaintiff's house the next day to pick up his children because he wanted to avoid any further incidents. Michael Comerford testified that on one occasion he called the police on Mr. Magee when he observed that defendant had been sitting in his car for thirty minutes in the parking lot of plaintiff's apartment after picking up the children in the morning.

The trial justice issued a bench decision on April 7, 2003. She said that she believed plaintiff to be the more emotionally stable of the two parties and that she found defendant's behavior to be "very strange," "singularly unsettling and not evidence of a calm, focused and stable person." In addition, she said, the mother had a home to offer to the children, while defendant continued to reside with his parents. The trial justice further found that plaintiff had been the sole financial support of the children without any meaningful contribution from defendant, that plaintiff "buys their clothes, takes care of all their needs, covers them with the health insurance, and does so without the assistance from Mr. Magee." She acknowledged, however, that defendant spends considerable time with his children and that "he knows how to take care of their physical needs when they are with him." The trial justice further found the continuous changes in placement and the accompanying separations to be not in the children's best interest. In addition, the trial justice found that defendant's actions involving the police on Christmas Eve and Christmas Day, as well as his conducting surveillance of plaintiff's apartment with his children in the car, were not in the children's best interest.

In her decision, the trial justice awarded sole custody of the children to plaintiff. She further allowed plaintiff to enroll the girls in a preschool of her choosing. She also denied defendant any overnight visits until an evaluation was presented to the Family Court "as to what effect, if any, the Ativan was having on [defendant's] behavior." The trial justice set the following visitation schedule: Saturday and Sunday on alternate weekends from 10 a.m. to 6 p.m., as well as one evening per week from 5 p.m. to 7:30 p.m. She then ordered defendant to pay child support according to the child support guidelines, retroactively to February 2002, "when the initial pleading for support was filed."[4] She further ordered that he pay the arrearage at a rate of $25 per week. She expressed

---

4. The order implementing the trial justice's decision, which was entered on May 7, 2003, sets child support payments retroactively to February 2003. We are satisfied, however, that because of the trial justice's qualifying remark "when the initial pleading for support was filed," she intended to, indeed, set child support payments retroactively to February 2002, and that the order, therefore, contains an error.

her confidence that defendant would be able to meet his child support obligations since he does not have many other financial obligations because he resides with his parents. In addition, she noted that the parties jointly own a house in North Kingstown, which they intend to sell or already have sold. Furthermore, the trial justice entered a restraining order restraining and enjoining defendant "from assaulting, molesting, or otherwise interfering with this Plaintiff at home, on the street, or elsewhere." The restraining order is to remain in effect until April 7, 2006. A single exception provides for communication by phone about the children's visitation. An order implementing the trial justice's decision was entered on May 7, 2003, from which defendant timely appealed.[5]

On appeal defendant argues that the trial justice "overlooked and misconceived material evidence or was otherwise clearly wrong" about the following issues: (1) her restriction of defendant's cross-examination of plaintiff concerning defendant's alcohol abuse;[6] (2) the limitations she placed on defendant's visitation with his minor children; and (3) the establishing of a child support arrearage "from a time when the parties at the very least enjoyed shared placement of the minor children with [defendant] caring for the children a majority of the time." In addition, defendant argues that the trial justice was barred by res judicata from entering a restraining order against defendant because it was "based upon the same facts and circumstances that another justice of the same court denied after a full hearing on the issue." We proceed to examine defendant's contentions *seriatim.*

## Discussion

### I

### Limits on Cross–Examination

■ With regard to the alleged improper limitations the trial justice imposed on defendant's ability to cross-examine plaintiff on defendant's abuse of alcohol, defendant says that he was "unable to cross-examine the [p]laintiff on that issue, at all, during the hearing on the merits. The trial justice sustained [p]laintiff's objections on relevancy grounds."

Rule 611(b) of the Rhode Island Rules of Evidence provides with respect to the scope of cross-examination:

"Cross-examination should be limited to the subject matter of the direct examination and matters affecting the credibility of the witness. The court may, in the exercise of discretion, permit inquiry into additional matters as if on direct examination."

This Court repeatedly has held that "[a] trial justice's rulings on the scope and extent of cross-examination are reviewed only for abuse of discretion[.]" *State v. Roderigues,* 656 A.2d 192, 194 (R.I.1995) (citing *State v. Morejon,* 603 A.2d 730, 736 (R.I.1992)). Even in criminal cases in which the right to cross-examination is constitutionally required, this Court has said that "once sufficient cross-examination has been accomplished, the constitu-

---

5. One filing fee of $150 was properly paid on May 14, 2003.

6. The issues section of defendant's Rule 12A statement says that defendant is seeking review of the trial justice's limitation of cross-examination with respect to defendant's explanation of a misdemeanor conviction. In the argument section of his statement, however-

er, defendant discusses the trial justice's limitation on defendant's ability to cross-examine with regard to defendant's alcohol abuse. Because we are unable to find discussion of a misdemeanor conviction in the record, we will examine defendant's ability to cross-examine with regard to his alcohol abuse.

tional safeguards are satisfied, and further cross-examination is left solely within the discretion of the trial justice." *State v. Fisher*, 844 A.2d 112, 115 (R.I.2004) (citing *State v. Hazard*, 745 A.2d 748, 756 (R.I. 2000)).

In his argument, defendant fails to refer us to a specific instance in which the trial justice impermissibly restricted his ability to cross-examine plaintiff. Our review of the transcripts reveals, rather, that defendant had ample opportunity to cross-examine Ms. Waters about his alleged alcohol abuse. At one point during the cross-examination of plaintiff, the trial justice permitted, over objection, inquiry into plaintiff's own alcohol use at the 2001 wedding, saying "You may answer. Everybody's use of substance is relevant when it comes to the custody of children. You may answer." Moreover, it is clear to us that the trial justice did not rely on plaintiff's testimony in this regard. In her decision, the trial justice referred to defendant's "long-standing problem with alcohol," his two "admissions for detoxification" in 1990 and 1995, and his own testimony that he had a slip in his sobriety in 1997, but has been clean and sober ever since. She then recounted plaintiff's testimony that he has continued to drink off and on since 1997, concluding "there really isn't any corroboration on that issue one way or the other." Without a specific reference to any alleged error committed by the trial justice, we are satisfied that she did not improperly limit the scope of cross-examination.

## II

### Custody and Visitation

■ In his next point on appeal, defendant argues that the trial justice overlooked and misconceived evidence that plaintiff "was not in fear of her daughters' safety while they were with their father" when she substantially modified the child custody and visitation arrangements the parties had agreed upon in their temporary consent order of April 12, 2002.

■ " 'Although a consent [order] receives a court's imprimatur, [it] is in essence a contract between the parties to the litigation' and is to be construed as a contract." *In re McBurney Law Services, Inc.*, 798 A.2d 877, 882 (R.I.2002) (quoting *Trahan v. Trahan*, 455 A.2d 1307, 1310 (R.I.1983)). It is uncontested that the parties agreed to the consent order of April 12, 2002, and that until the decision now under review, the children spent substantial time with their father.

■ "Few principles are more firmly established in the law, however, than that in awarding custody, placement, and visitation rights, the 'paramount consideration' is the best interests of the child." *Dupré v. Dupré*, 857 A.2d 242, 251–52 (R.I.2004) (quoting *Africano v. Castelli*, 837 A.2d 721, 728 (R.I.2003)). " 'If the Family Court has properly considered what custody arrangements are in the best interests of the child[ren], [this Court] will not disturb such a discretionary decision.' " *Africano*, 837 A.2d at 728 (quoting *Pacheco v. Bedford*, 787 A.2d 1210, 1213 (R.I.2002)). "The same discretion applies to decisions pertaining to modification of visitation." *Id.* (citing *Seravo v. Seravo*, 525 A.2d 922, 926 (R.I.1987)).

"In assessing the best interests of the child, the trial justice should consider: (1) the wishes of the child's parents; (2) the reasonable preference of the child (if he or she is of sufficient intelligence and understanding); (3) the interaction and relationship of the child to the parents; (4) the child's adjustment to his or her home, school and community; (5) the mental and physical health of the individuals involved; (6) the stability of the

child's home life; (7) the moral fitness of the parents; and (8) the willingness of each parent to facilitate a close relationship between the child and the other parent. *Pettinato v. Pettinato*, 582 A.2d 909, 913–14 (R.I.1990). No one factor is determinative; rather, the trial justice should consider a combination of and an interaction among all the relevant factors. *Id.* at 914." *Africano*, 837 A.2d at 728.

The trial justice in this case was provided with substantial testimony about the children's current life situation, and their parents' circumstances and relationship. In her decision, she found that the "parties had a very lengthy and often volatile relationship." She referred to specific incidents, and found that defendant's actions in calling the police on Christmas Eve about the inspection sticker on plaintiff's car, as well as defendant's conducting surveillance on plaintiff's apartment, were not in the children's best interests. In addition, the trial justice found that the repeated separations from one parent or the other, often twice a day, were not beneficial to the children. Furthermore, the trial justice found the mother to be "the more emotionally stable of these two parties," and had "a home to offer" whereas defendant was living with his parents at the time. The court also found defendant's behavior to be "singularly unsettling and not evidence of a calm, focused, and stable person," and expressed concern regarding his use of Ativan. Nevertheless, the trial justice observed that defendant spent considerable time with his daughters and that "[t]here is no doubt that he knows how to take care of their physical needs when they are with him."

Our review of the proceedings below shows that the trial justice placed particular emphasis on the stability of the children's home life, the mental and physical

health of the individuals involved, the moral fitness of the parents, and the willingness of each parent to facilitate a close relationship between the child and the other parent. We are satisfied that her award of sole custody to plaintiff and the visitation schedule set by the trial justice correctly reflect her evaluation of the parties in light of the proper factors. Therefore, we cannot discern an abuse of discretion, or that the trial justice overlooked or misconceived any material evidence, and we affirm the trial justice's awards of custody and visitation.

## III

### Retroactive Child Support

■ The defendant argues that the trial justice erred by not taking into account the parties' shared placement arrangement under the terms of the temporary consent order when she awarded retroactive child support. The defendant asserts that the trial justice contradicted herself when she found that defendant "knows how to take care of [the children's] physical needs when they are with him," but also found that plaintiff "has been the sole financial support of these children * * * [and] has had no meaningful contribution from the Defendant * * *." In addition, he contends that plaintiff provided health insurance for the children only because she received it through her employer. The defendant claims that the trial justice did not properly take into account his contributions in providing the everyday necessities for the children.

■ General Laws 1956 § 15–5–16.2(a) provides that the Family Court "shall order either or both parents owing a duty of support to a child to pay an amount based upon a formula and guidelines adopted by an administrative order of the family court." "It is well established that the

appropriate award of child support is to be determined by the trial justice in his or her sound discretion, and we shall not disturb such a determination on review absent a clear abuse of that discretion." *Mattera v. Mattera,* 669 A.2d 538, 542 (R.I.1996) (citing *Gibbons v. Gibbons,* 619 A.2d 432, 435 (R.I.1993); *Sullivan v. Sullivan,* 460 A.2d 1248, 1249 (R.I.1983); *Brierly v. Brierly,* 431 A.2d 410, 415 (R.I.1981)). The defendant does not challenge the current determination of child support, which the trial justice arrived at by strictly adhering to the support guidelines in the Family Court Child Support Guideline Worksheet. We assume, therefore, that his challenge solely addresses the establishment of retroactive support to February 2002, "when the initial pleading for support was filed."

Again, defendant fails to support his assertions with specific references to the record. It cannot simply be assumed that if parents are sharing physical placement on a relatively equal basis, they also are sharing the financial obligations on a similar basis. Here, the trial justice specifically found that defendant "contributes nothing to the support of these girls. Plaintiff buys their clothes, takes care of all their needs, covers them with the health insurance, and does so without the assistance from Mr. Magee." We perceive no abuse of discretion in her award of child support.

## IV

### Restraining Order

Finally, defendant seeks review of the restraining order that was entered against him. He does not challenge the jurisdiction of the court to grant such an order; rather, he contends that the doctrine of res judicata precluded the trial justice from restraining and enjoining him from assaulting, molesting, or otherwise interfering with plaintiff. He argues that the restraining order was predicated upon the same facts and circumstances that were fully and completely litigated before another justice of the Family Court a year earlier. The request for a restraining order was denied at that earlier hearing.

"Res judicata 'makes a prior judgment in a civil action between the same parties conclusive with regard to any issues that were litigated in the prior action, or, that could have been presented and litigated therein.'" *Ritter v. Mantissa Investment Corp.,* 864 A.2d 601, 605 (R.I.2005) (quoting *ElGabri v. Lekas,* 681 A.2d 271, 275 (R.I.1996)). "The application of the doctrine is appropriate when there exists 'identity of parties, identity of issues, and finality of judgment in an earlier action.'" *Id.* (quoting *ElGabri,* 681 A.2d at 275). "In determining the scope of the issues to be precluded in the second action, we have adopted the broad 'transactional' rule." *Id.* (quoting *ElGabri,* 681 A.2d at 276). "This rule precludes the re-litigation of 'all or any part of the transaction, or series of connected transactions, out of which the [first] action arose.'" *Id.* (quoting *ElGabri,* 681 A.2d at 276).

Here, it is apparent from a review of the record that there is not a sufficient identity of issues to implicate the principles of res judicata. The first proceeding was a hearing on plaintiff's complaint for protection from abuse filed pursuant to G.L.1956 chapter 15 of title 15. The issue before the court was whether defendant had caused her physical harm, attempted to cause her physical harm, or placed her in fear of imminent serious physical harm. The hearing justice found that plaintiff had failed to meet her burden of proof, and dismissed the *ex parte* restraining order that had been issued.

The second proceeding was on the plaintiff's miscellaneous petition and the defen-

dant's counterclaim in which both parties requested restraining orders. Significantly, it is clear from the record that the trial justice relied on evidence of intimidating and harassing conduct that occurred after the February 8, 2002 hearing date on the plaintiff's complaint for protection from abuse. Specifically, she found that the pick-ups and drop-offs of the children had become contentious. The trial justice recounted two "incidents of confrontation" that she found to be "intimidating behavior" by the defendant. She further noted that the "defendant concedes calling the plaintiff names, although he denies doing it in front of the children," and found that he had engaged in strange stalking behavior. These incidents all occurred while the plaintiff's miscellaneous petition was pending in the Family Court, after February 8, 2002. They are, therefore, not part of the transaction out of which the earlier complaint for protection from abuse arose. Consequently, the current restraining order is not barred by res judicata, and we are satisfied that the trial justice was acting well within her discretionary authority when she granted the restraining order to the plaintiff.

## Conclusion

For the foregoing reasons, we affirm the judgment of the Family Court, to which we return the papers of the case.