**In the Interest of C. E. B., a Child.**

**No. 9138.**

Court of Civil Appeals of Texas, Amarillo.

July 31, 1980.

438

Griffith & Brister, Thomas J. Griffith, Lubbock, for appellant.

Key, Carr, Evans & Fouts, Aubrey J. Fouts, Lubbock, for appellee.

REYNOLDS, Chief Justice.

The father and managing conservator of C. E. B., a nine year old female, seeks the reversal of an order modifying the visitation privileges of the mother as possessory conservator. A reversal is justified, the father contends in the main, because the state of the evidence does not warrant a change of access to or custody of the child, and the order is unlawful and an abuse of judicial discretion. We cannot say that the order is vulnerable to these or any other contention made. Affirmed.

The father's twelve points of error require us to notice the nature of the order and the state of the evidence. In doing so, we address the points topically rather than seriatim.

Following the birth of the child whose interests lie at the heart of this litigation, the mother and father were divorced prior to 1974. A pre–1974 order respecting the child was modified in December of 1976. By the modification, the father was appointed managing conservator with all rights, privileges, duties and powers set out in Section 14.02 of the Texas Family Code (Vernon 1975; Vernon Supp.1980),[1] and the mother was appointed possessory conservator with all rights, privileges, duties and powers set out in Section 14.04. Under the authority of Section 14.04(4), the court expressly granted the mother

> possession of the child at reasonable times and places for visitation, which shall include but not be limited to an equal division of normal public school vacation periods for Thanksgiving, Christmas, and Easter or Spring holidays, such periods of visitation to be arranged so as to create the least disturbance of normally scheduled activities and routines of the managing conservator's family and that, during the summer months, such possession and access shall extend at the present time to visits up to two weeks in

[1]. Future references to sections are to the sections of the Texas Family Code (Vernon 1975; Vernon Supp.1980).

duration, which period of visitation shall be extended up to one month after the named child has attained ten years of age.

At this time, both parents lived in Lubbock, Texas. The father was a professor, and the mother was pursuing her formal education, at Texas Tech University.

Thereafter in May of 1978, the mother received her Master's Degree from Texas Tech University and moved to New York where she became employed as a sales representative for a biochemical firm. There she began, and at time of trial still was, "living with" a man, who is a director of pesticides for a chemical laboratory, on his seven–acre estate fifty miles from New York City.

Although apprehensive about the mother's living arrangements, the father consented to the child's visiting in New York when the mother assured him that the man with whom she lived would be absent during the child's stay. Despite the assurance, the man was present for one day during the child's visit. Disapproving of the child's exposure to the mother's "alternative" life style, the father subsequently has refused to allow the child to visit the mother in New York.

The present action ensued. The mother, alleging that her and the child's circumstances have materially and substantially changed and that the father has refused to permit reasonable visitation with and access to the child, moved the court to modify the 1976 order.

Following a bench hearing of the testimony of the mother and father, the order precipitating this appeal was issued. The court's order specifies that:

(a) The Possessory Conservator shall be entitled to have possession of the child beginning on June 18, 1979, and with the child to be returned to the Managing Conservator on July 22, 1979. Possessory Conservator shall be entitled to have possession of the child at her home in New York or at such other place as she may choose, and the Possessory Conservator shall be responsible for air fare transportation of the child from Lubbock, Texas, to her destination and the return air fare to Lubbock, Texas, at the end of the visitation period.

(b) Beginning in the summer of 1980, the Possessory Conservator shall be entitled to possession of the child at her home or at such other place as she may choose, for a period of thirty (30) days, with such period to be agreed upon by the parties, and if the parties are unable to agree upon the summer period of visitation, then such visitation period shall be from June 1 to June 30, 1980; and such summer visitation periods shall continue until the child is twelve (12) years of age, at which time the summer visitation period of the Possessory Conservator shall be for a period of six (6) weeks, to be agreed upon by the parties, and if the parties are unable to agree upon the time of such visitation, then it shall be from June 1 to July 15 of each year.

(c) Possessory Conservator shall be entitled to have possession of the child for one (1) week during the school Christmas holiday season in 1979, and in alternate years thereafter, and the Possessory Conservator shall be responsible for air fare transportation of the child to and from the place of visitation during such Christmas visitation.

(d) In years in which the Possessory Conservator does not have the child during the Christmas vacation, then the Possessory Conservator shall be entitled to have possession of the child for one (1) week during the Spring school vacation, and she shall be responsible for air fare to and from the place of visitation during such Spring school vacation visitation.

(e) In addition to the above specific visitation periods, the Possessory Conservator shall be entitled, upon reasonable notice, to visit the child at any reasonable time and place in Lubbock,

Texas, or such other place as she may be in the possession of the Managing Conservator.

The court fortified the order by findings of fact and one conclusion of law. The factual findings, in brief, are: the mother's change in residence and her employment and economic circumstances render it impractical and impossible to visit the child in Lubbock; the father has unreasonably denied the mother visitation rights with the child; there has been a material change of circumstances since the last order; and due to the circumstances of the parties and the age of the child, it would be in the best interest of the child to permit visitation with her mother as stated in the modified order. The court concluded that a material change of circumstances and the best interest of the child justify and support a modification of the previous order.

The trial court, having jurisdiction of the suit affecting the parent–child relationship, was empowered to modify the prior December, 1976 order. Section 14.08. The father initially contends that the modified order is one decreeing a change of custody within the scope of his cited pre–Code cases condemning "split custody" of a child. We are not persuaded to adopt the contention.

Prior to the 1 January 1974 effective date for Title 2 of the Texas Family Code, the statutes controlled the divorce–suit disposition of children under the general term of "custody" as "[it] is for the best interest of [the child or children]," without distinguishing between the authority and obligations of the custodial parent and those of the non–custodial parent. Tex.Rev.Civ.Stat. Ann. arts. 4639, 4639a § 1 (repealed, 1973 Tex.Gen. Laws, ch. 543, § 3 at 1458). Then, some courts looked upon a court ordered visitation of the child in the home of the non–custodial parent, even for one week, as a change to inadvisable "split custody." *See, e. g., Heard v. Bell*, 434 S.W.2d 222, 224 (Tex.Civ.App.–El Paso 1968, no writ). It was the view of other courts that such a visitation order, even one providing for a longer period of visitation in the non–custodial home, *did not* provide for a "divided custody." *See, e. g., Leithold v. Plass*, 413 S.W.2d 698, 702 (Tex.1967). These conflicting views gave rise to the late Justice Norvell's statement, in his dissenting opinion in *Leithold*, that the distinction between custody rights and visitation rights is elusive at best. 413 S.W.2d at 702.

To eliminate the artificial distinction between custody and visitation, which often was nebulously based on the time the child spent with the non–custodial parent, the Texas Family Code adopted the terms "managing conservator" and "possessory conservator" and prescribes, subject to the court's power to limit or expand, the rights and duties of each. Section 14.01, *et seq.*; Smith, *Title 2. Parent and Child*, 5 Tex. Tech.L.Rev. 389, 428 (1974); *Alternate Managing Conservatorship Under the Family Code*, 30 Baylor L.Rev. 83, 84 (1978). With the recognition that the circumstances may call for the child to spend some time with the possessory conservator, the Code specifically provides that the court may "set the time and conditions for possession of or access to the child by the possessory conservators," without circumscribing the time. Section 14.03(a). Foremost, however, is that the best interest of the child is still the primary consideration. Section 14.07(a); *Wiley v. Spratlan*, 543 S.W.2d 349, 351 (Tex. 1976). *Cf. Bergerac v. Maloney*, 478 S.W.2d 111, 113 (Tex.Civ.App.–Beaumont 1972, no writ) (holding, under pre–Code law, that whether the modified order be considered a "visitation right" or a "split custody," the issue is always the best interest of the child). And, in determining the best interest of the child, the court shall consider circumstances of the parents. Section 14.-07(b).

█ In the light of these Code provisions and the respectable authority, we do not credit the father's argument that the time provided in the present order for the child to be in possession of the mother alone converts the modified order, measured by some pre–Code cases, into a change of conservatorship regardless of the name applied

to it.[2] Interestingly, the time periods prescribed in the prior order, being unchallenged, apparently were suitable and, significantly, it was graphically illustrated during oral argument, and not disputed, that the total time the child would spend in possession of the mother is the same number of days under both the prior and the present order.

In assessing the nature of the order, we must credit the relief actually requested and granted. The mother's motion for modification, a necessity under Section 14.-08(a), focused only on a modification of her rights as possessory conservator, i. e., her rights of visitation and to have the child in her possession for visitation. The court's order, issued pursuant to Section 14.08(c)(2), and the supporting factual findings are likewise focused; the order does not even hint at an alternative managing conservatorship, and the mother is not granted any rights or charged with any obligations previously reserved to the father as managing conservator. The father's status as sole managing conservator is not altered by the present order; all his rights, privileges, duties and powers continue in force, subject only, as the Code provides, to the rights, privileges, powers and duties devolved upon the mother as possessory conservator. Section 14.02. Even tested by pre-Code law, the order does not decree a change of custody. *Hollis v. Hollis*, 508 S.W.2d 179, 181 (Tex.Civ.App.–Amarillo 1974, no writ). *See also, Leithold v. Plass, supra*, at 700. It follows that the present order, modifying only the access and possession rights of the possessory conservator within permitted bounds, does not decree a change of custody.

▓ Still, the authority of the trial court to modify that portion of the prior order which sets the terms and conditions for access to or possession of a child is quali-

fied. A modification is authorized only "if the circumstances of the child or a person affected by the . . . portion of the decree to be modified have materially and substantially changed since the entry of the order or decree." Section 14.08(c)(2). The court found that "[t]here has been a material change of circumstances since the entry of the Order to be modified" and "it would be in the best interest of the child" to permit the visitation stated in the modified order. Hence, the prerequisite findings for a modification have been made.

The father, however, challenges, by "no evidence" and "factually insufficient evidence" points, the state of the evidence to support these material, as well as other, findings made by the court in support of its order. These points invoke our consideration of the quantum and quality of the evidence under the principles of review enunciated in *Garza v. Alviar*, 395 S.W.2d 821, 823 (Tex.1965).

▓ Initially, the father submits the court necessarily relied solely on the mother's removal from Lubbock to New York as the basis for a change of circumstance or condition inasmuch as there has been no alteration of the child's family, home, school, association or any other factor involving the custodial parent. In this regard, it should be noted that a showing of a material and substantial change of circumstances of the child is not required; it is sufficient that such change of circumstances be of a person affected by the order, Section 14.08(c)(2), which, in our view, includes a possessory conservator.[3] *Cf. Watts v. Watts*, 563 S.W.2d 314, 316 (Tex.Civ. App.–Dallas 1978, writ ref'd n. r. e.) (holding that the word "parent" as used in Section 14.08(c)(1) includes both the custodial and non–custodial parents). And, contrary to the father's appraisal of the record, there

---

**2.** We are not to be understood as implying that so long as the order is entered under the guise of a modification of the possessory conservator's rights, it never can achieve a change of conservatorship. That broad issue exceeds the scope of the issues presented in this appeal.

**3.** Prior to the amendment of Section 14.08 effective 1 September 1975, subsection (a) thereof dictated that a motion for modification "shall allege that the circumstances of the child have materially and substantially changed since the entry of the order sought to be modified."

is evidence of changed circumstances other than the mother's mere removal. It will not profit to detail the unpleasant record; exemplars will suffice.

The father limited the previously ordered access to and possession of the child by the mother, including a refusal to permit visitation on the night before the current hearing, on the theory that he was following the pronouncement from *Heard v. Bell, supra,* at 224, which begins with the words "that split custody is not advisable to provide for the proper future of children." He then points to some testimony tending to show that the mother did not attempt visitation although she took vacation and working trips of distances greater than from New York to Lubbock. The mother testified that since her move to New York, she has a week of summer vacation and it was not appropriate to take the child on her working trips. She elaborated on her difficulties in seeing the child occasioned by the father's attitude toward her living arrangements and her distance from the child. She professed love for and a good relationship with the child. The child wanted to visit with her, but did not want the mother to pursue the present court action because, the mother thought, "she is afraid that she won't be allowed to see me." In the mother's opinion, a modification was necessary to enable her to have a meaningful relationship with the child.

The mother argues that the evidence shows the prior order is unworkable and inappropriate under existing circumstances, including the behavior of the parties, which, as announced in *Boney v. Boney,* 458 S.W.2d 907, 911 (Tex.1970), is the only change that need be shown to justify a new visitation order. However, Professor Smith, one of the scholars who drafted the Code, opines that the Code (which requires a material and substantial change of circumstances) probably changes the law of *Boney.* Smith, *Title 2. Parent and Child, supra,* at 433.

But aside from that, the trial court reasonably could believe from the evidence that the physical situation of the mother vis–a–vis that of the child and the father's limitation of the mother's court sanctioned access to and possession of the child was, on balance, such a change of circumstances as resulted in thwarting the meaningful relationship of mother and child sought to be accomplished by the prior order. Subsequent to the enactment of the Code, it has been written that evidence of the thwarting of the parental relationship with children by restrictive visitation provisions supported a finding of substantial and material change of conditions to justify a modification of the prior order. *Hanna v. Turner,* 556 S.W.2d 866, 869 (Tex.Civ.App.–Corpus Christi 1977, no writ).

The father urges, as the most important matter, that the moral and religious training and reasonable discipline of the child entrusted to him under the Code is completely undermined by the present order. This results, he contends, because the child, reared in a home which takes a traditional view of marital and sexual relations including marriage before cohabitation, is forced into a home where she is taught her mother approves of the alternative lifestyle of cohabiting without benefit of marriage. By her testimony, the mother does not impose her lifestyle on anyone and, other than answering the child's question by saying she lived in the same house as the man (with whom she is living), she has not discussed nor volunteered any information to the child about that relationship. The mother described a traditional visit by the child in the home, and she said the child was fond of the man with whom the mother lives.

The mother's lifestyle was one of the facts, among many, for consideration by the court. It was a circumstance about which the court expressed concern, but the court subordinated it to "[m]y primary concern" for and "[t]he real issue" of "the best interest and welfare of the child." It, therefore, cannot be the controlling circumstance in the face of the court's decision.

It was error, the father asserts, for the court to admit, over proper objection, evidence of his sexual misconduct

which occurred prior to the divorce of these parties.[4] We agree. Evidence of prior conduct of one of the parties cannot be introduced except to corroborate some evidence of similar conduct since the prior decree, *Wilson v. Elliott*, 96 Tex. 472, 73 S.W. 946, 947 (1903), and there is no evidence of similar, subsequent conduct by the father in this record.

 We do not agree, however, that admission of the evidence was reversible error. The strength of the evidence goes not to whether there has been such a change of circumstances that it would be in the best interest of the child to modify the possessory conservator's rights, but only to the fitness of the father, an issue not before the court. At most, the error rises to no more than harmless error. Tex.R.Civ.P. 434.

Evident from what we have written is that in this situation with such conflicting considerations, the trial court must be accorded the right to exercise a large measure of discretion in delineating the rights of the parties within the ambit of his authority. He is the one with the opportunity to observe and evaluate the personalities of the witnesses, to weigh the credibility of the witnesses, to assess the needs of the child, and to adjudge from personal observation which arrangement will serve the best interest of the child. It is a familiar principle that the test of a matter entrusted to the discretion of the trial court is not how the appellate court would have decided it, but whether the court's decision is so arbitrary or unreasonable as to amount to an abuse of that discretion. *Southwestern Public Service Co. v. Vanderburg*, 581 S.W.2d 239, 247 (Tex.Civ.App.–Amarillo 1979, writ ref'd n. r. e.). The principle is, of course, applicable in reviewing an order modifying the right of access to and posses-

sion of a child. *Hanna v. Turner, supra*, at 868, and cases there cited.

We cannot say, after reviewing this record, that the controlling factual findings lack the requisite evidential support, or that the trial court abused its discretion in modifying the order within the extent of its authority. Accordingly, all of the father's points of error are overruled.

The judgment is affirmed.

---

4. Collateral to the assertion is the father's complaint that the trial judge, ignoring his position as impartial arbiter, coached the mother's counsel how to ask the questions pertaining to the sexual incidents. Here, the court did not, as the court did in *Green v. White*, 203 S.W.2d 960, 961–62 (Tex.Civ.App.–El Paso 1947, no writ), propound the questions to and elicit the testimony from the witness. The court merely suggested the rephrasing of questions to which objection was made. There was no objection to the court's remarks, and we consider the complaint waived. 1 Ray, *Texas Law of Evidence* § 22 (Texas Practice 3d ed. 1980). Moreover, *Green* held the actions of the judge in propounding the questions did not constitute reversible error.