IN THE

TENTH COURT OF APPEALS




 
 
 
 
 
 
 


 



No. 10-07-00046-CV

 

In the
Interest of W.R.M.D., a Child,

                                                                                    

 

 



From the 378th District Court

Ellis County, Texas

Trial Court No. 66664D

 



MEMORANDUM Opinion



 

            In this suit to designate which parent
should have the exclusive right to designate the primary residence of W.R.M.D.,
a jury found for Appellee Kenneth Denny.  Appellant RaeLee Parrish appeals,
complaining in one issue that the trial court abused its discretion by
excluding evidence of Denny’s motives and of his conduct that occurred before
his paternity was established.  We will affirm.

            Denny’s paternity was established in
February 2004, when W.R.M.D. was about twenty months old, and Parrish was given
the exclusive right to designate W.R.M.D.’s primary residence.  About eighteen
months later, Denny petitioned to modify the parent-child relationship by being
appointed as the person with the right to designate W.R.M.D.’s primary
residency, asserting a material and substantial change in the circumstances. 
At trial, the trial court precluded Parrish from offering evidence that, before
W.R.M.D.’s birth (and before the order sought to be modified):  (1) Denny
“threatened” Parrish that he would take an active role in the child’s life if
Denny turned out to be the father; (2) Denny would attempt to get custody if he
were the father; (3) Denny asked Parrish to have an abortion; and (4) Denny
wanted to relinquish his parental rights before a DNA paternity test was
conducted.

            We review a trial court’s decision to
exclude evidence for abuse of discretion. Rosas v. Hatz, 147 S.W.3d 560,
563 (Tex. App.—Waco 2004, no pet.); see Exxon Pipeline Co. v. Zwahr,
88 S.W.3d 623, 629 (Tex. 2002).  A trial court abuses its discretion when it
acts “without reference to any guiding rules or principles,” or stated another
way, when the trial court acts in an arbitrary and unreasonable manner.  City
of San Benito v. Rio Grande Valley Gas Co., 109 S.W.3d 750, 757 (Tex. 2003).

            Texas law is well settled that
evidence of misconduct that occurred before rendition of the order sought to be
modified is inadmissible in a subsequent proceeding.  Wilson v. Elliott,
96 Tex. 472, 73 S.W. 946, 947 (1903); In re C.E.B., 604 S.W.2d 436, 443
(Tex. Civ. App.—Amarillo 1980, no writ); In re B.S.L., 579 S.W.2d 527, 529
(Tex. Civ. App.—San Antonio 1979, writ ref’d n.r.e.); Olds v. Burton,
181 S.W.2d 118, 119 (Tex. Civ. App.—Eastland 1944, no writ).  An exception to
this rule is that evidence of misconduct occurring before the original decree
or order is admissible to corroborate testimony of subsequent similar
misconduct.  C.E.B., 604 S.W.2d at 443; Olds, 181 S.W.2d at 119. 
In the trial court, Parrish sought to come within this exception.

            We agree with Denny that the alleged
prior conduct is not misconduct per se, but because Parrish seeks to treat it
as such to use it against Denny, we will consider it as such as well.  The gist
of Parrish’s argument is that Denny did not want her to have the child, but if
she did and he turned out to be the father, he would “punish” her by being
involved in the child’s life and by seeking custody or dragging her into court
all the time.  She essentially claims that Denny has been engaging in
substantially similar conduct because after February 2004, when his paternity
of W.R.M.D. was proved, he took an active role in the child’s life.  But
neither we nor Parrish can divine whether Denny is trying to “punish” Parrish
or whether he is just attempting to be a good father and to act in the child’s
best interest.  The trial court aptly noted that the evidence’s prejudicial
effect greatly outweighed its probative value and that if Denny lost and
continued to fight Parrish in court, the evidence could possibly be relevant
then.

            The trial court did not abuse its
discretion in excluding evidence of alleged misconduct occurring before the
order sought to be modified.  We overrule Parrish’s sole issue and affirm the
trial court’s order.

 

 

BILL VANCE

Justice

 

 

Before
Chief Justice Gray,

Justice Vance, and

Justice Reyna

Affirmed


Opinion
delivered and filed October 17, 2007

[CV06]






o","serif"'>            Here, the extraneous offense
is sufficiently similar to the charged offense.  Both victims were Newton’s step-daughters; both were about ten when Newton sexually assaulted them; both
were similar in appearance; Newton did not threaten either of them; and Newton abused both of them for several years.  See Galvez, No. 10-06-00332-CR, slip
op. at 6, 2009 Tex. App. LEXIS 6300, at *9; Blackwell v. State, 193
S.W.3d 1, 14-15 (Tex. App.—Houston [1st Dist.] 2006, pet. ref’d); Dennis,
178 S.W.3d at 179; see also Bargas v. State, 252 S.W.3d 876, 893 (Tex.
App.—Houston [14th Dist.] 2008, no pet.) (addressing similarity of extraneous
offense in Rule 403 analysis).  Newton himself conceded on cross-examination
that the extraneous-offense evidence and the charged offense were “remarkably
similar.”

 

Remoteness

            The remoteness of an
extraneous offense does impact its probative value.  See, e.g., Reyes v.
State, 69 S.W.3d 725, 740 (Tex. App.—Corpus Christi 2002, pet. ref’d). 
However, Rule 404 does not impose any presumptive time limitation which must be
met for an extraneous offense to have probative value.  See Tex. R. Evid. 404; Hernandez v.
State, 203 S.W.3d 477, 480 (Tex. App.—Waco 2006, pet. ref’d); Prince v.
State, 192 S.W.3d 49, 55 (Tex. App.—Houston [1st Dist.] 2006, no pet.); Corley
v. State, 987 S.W.2d 615, 620 (Tex. App.—Austin 1999, pet.).

            Evidence either has
probative value, or it does not.  See 1 Steven Goode et al., Guide to the Texas Rules of Evidence § 401.3
(3d ed. 2002) (“Relevancy is an absolute.  Either it is present or it is
not.”).  Thus, remoteness is of import not when determining whether when extraneous-offense
evidence has probative value but when assessing whether the probative value of
such evidence is substantially outweighed by the danger of unfair prejudice or
similar concerns under Rule 403.  See, e.g., Reyes, 69 S.W.3d at 740; Corley,
987 S.W.2d at 620; 1 Goode, supra
§ 401.3.  But cf. Teczar v. State, No. 11-07-00075-CR, 2008 Tex. App. LEXIS 7876, at *21 (Tex. App.—Eastland Oct. 16, 2008, pet.) (not designated for
publication) (examining remoteness in Rule 404(b) analysis, but citing Corley
which examined remoteness under Rule 403).  Accordingly, we will address the
remoteness of the extraneous-offense evidence in our analysis under Rule 403.

            The extraneous-offense
evidence regarding L.D. is sufficiently similar to the charged offenses to be
admissible under Rule 404(b) to rebut Newton’s fabrication defense.  Remoteness
is not a consideration under Rule 404(b).  Thus, the court did not abuse its
discretion by overruling Newton’s Rule 404(b) objection.  We overrule his first
point.

Rule 403

            Newton contends in his
second point that the court abused its discretion by admitting the
extraneous-offense evidence because its probative value was substantially
outweighed by the danger of unfair prejudice.

Relevant evidence may be excluded under
Rule 403 only if its probative value is substantially outweighed by the danger
of unfair prejudice.  Under Rule 403, it is presumed that the probative value
of relevant evidence exceeds any danger of unfair prejudice.  The rule
envisions exclusion of evidence only when there is a “clear disparity between
the degree of prejudice of the offered evidence and its probative value.”

 

Because Rule 403 permits the exclusion
of admittedly probative evidence, it is a remedy that should be used sparingly,
especially in “he said, she said” sexual-molestation cases that must be
resolved solely on the basis of the testimony of the complainant and the
defendant.

 

Hammer v. State, No. PD-786-08, 2009 Tex. Crim. App.
LEXIS 513, at *34-35 (Tex. Crim. App. Apr. 8, 2009) (quoting Conner v. State,
67 S.W.3d 192, 202 (Tex. Crim. App. 2001)) (footnotes omitted).

            In its seminal decision in Montgomery
v. State, the Court of Criminal Appeals identified four non-exclusive factors
to be considered in determining whether evidence should be excluded under Rule
403.  810 S.W.2d 372, 389-90 (Tex. Crim. App. 1991) (op. on reh’g).  Those
factors were: (1) the probative value of the evidence; (2) the potential to
impress the jury in some irrational, yet indelible, way; (3) the time needed to
develop the evidence; and, (4) the proponent’s need for the evidence.  See
id. (citing 22 Charles A. Wright
& Kenneth W. Graham, Federal Practice and Procedure § 5250, at
545-51 (1978); Edward J. Imwinkelried,
Uncharged Misconduct Evidence §§ 2:12, 8:03, 8:07 (1984)); accord
Prible v. State, 175 S.W.3d 724, 733 (Tex. Crim. App. 2005).

            More recently, the Court has
looked to the language of Rule 403 and restated the pertinent factors.

[A] trial court, when undertaking a Rule
403 analysis, must balance (1) the inherent probative force of the proffered
item of evidence along with (2) the proponent’s need for that evidence against
(3) any tendency of the evidence to suggest decision on an improper basis, (4)
any tendency of the evidence to confuse or distract the jury from the main
issues, (5) any tendency of the evidence to be given undue weight by a jury
that has not been equipped to evaluate the probative force of the evidence, and
(6) the likelihood that presentation of the evidence will consume an inordinate
amount of time or merely repeat evidence already admitted.  Of course, these
factors may well blend together in practice.

 

Gigliobianco v. State, 210 S.W.3d 637, 641-42 (Tex. Crim. App. 2006) (footnotes omitted); accord Subirias v. State, 278 S.W.3d 406,
408 (Tex. App.—San Antonio 2008, pet. ref’d); Brock v. State, 275 S.W.3d
586, 590 (Tex. App.—Amarillo 2008, pet. ref’d); Stafford v. State, 248
S.W.3d 400, 411-12 (Tex. App.—Beaumont 2008, pet. ref’d); but see De La Paz,
279 S.W.3d at 349 (applying Montgomery factors).[3]

            As with his Rule 404(b)
complaint, Newton’s primary contention is that the probative value of the
extraneous-offense evidence is substantially outweighed by the danger of unfair
prejudice because of the lack of similarities between the charged offenses and
the extraneous offense and because of the remoteness of the extraneous offense.[4]

            The extraneous-offense
evidence was probative to rebut Newton’s defensive theory of fabrication.  As
we have already discussed, the extraneous-offense evidence is sufficiently
similar to the charged offense to have probative value on this issue.  See
Galvez, No. 10-06-00332-CR, slip op. at 7, 2009 Tex. App. LEXIS 6300, at
*10; Bargas, 252 S.W.3d at 893; Blackwell, 193 S.W.3d at 15; Dennis,
178 S.W.3d at 180-81.  Conversely, Newton is correct that the remoteness of the
extraneous-offense evidence significantly lessens its probative value.  See
Teczar, 2008 Tex. App. LEXIS 7876, at *21; Reyes, 69 S.W.3d at 740. 
Thus, this factor weighs only slightly in favor of admissibility.

            The trial court could have
reasonably concluded that the State’s need for the extraneous-offense evidence
was “considerable.”  See Gigliobianco, 210 S.W.3d at 642.  There were no
eyewitnesses and no physical evidence available to corroborate the
complainant’s testimony.  See Wheeler, 67 S.W.3d at 889; Bargas,
252 S.W.3d at 893; Blackwell, 193 S.W.3d at 18; Dennis, 178
S.W.3d at 181.  In addition, the State demonstrated that it needed this
evidence to rebut Newton’s claim of fabrication.  Id.  Thus, this factor
weighs in favor of admissibility.

            Extraneous-offense evidence of
this nature does have a tendency to suggest a verdict on an improper basis because
of the inherently inflammatory and prejudicial nature of crimes of a sexual
nature committed against children.  See Montgomery, 810 S.W.2d at 397; Bjorgaard
v. State, 220 S.W.3d 555, 560 (Tex. App.—Amarillo 2007), pet. dism’d,
improvidently granted, 253 S.W.3d 661 (Tex. Crim. App. 2008) (per curiam); Blackwell,
193 S.W.3d at 17.  This danger of unfair prejudice was counter-balanced to some
extent by the trial court’s limiting instruction.  See Blackwell, 193
S.W.3d at 17-18.  Nevertheless, this factor weighs in favor of exclusion of the
evidence.  Id.

            The last factor concerns
whether presentation of the extraneous-offense evidence consumed an inordinate
amount of time.[5] 
See Gigliobianco, 210 S.W.3d at 641-42.  The State contends that we
should only consider the amount of time devoted to L.D.’s direct examination (11
pages).  See Dennis, 178 S.W.3d at 181 (“M.W.’s direct examination was
not unduly lengthy”).  Conversely, Newton includes much more in his
calculations: (1) “protracted discussions outside the jury’s presence as to its
admissibility” (48 pages); (2) L.D.’s entire testimony (direct,
cross-examination, redirect, etc.) (81 pages); (3) testimony of the person to
whom L.D. made outcry (10 pages); (4) testimony of L.D.’s father offered by Newton in rebuttal (23 pages); and (5) references in argument to L.D.’s testimony (41
pages).

            In Dennis, on which
the State relies, the court looked only to the length of the direct examination
of the extraneous-offense complainant and gave the following rationale for
doing so:

We decline Dennis’s invitation to
include in this analysis the time spent out of the presence of the jury on
motions and arguments concerning M.W.’s testimony.  The potential for unfair
prejudice occurs if the State spends an undue amount of time presenting the
extraneous offense to the jury.

 

Id. at 181 n.2.

            This factor focuses on the
time needed “to develop the evidence, during which the jury [is] distracted
from consideration of the indicted offense.”  State v. Mechler, 153
S.W.3d 435, 441 (Tex. Crim. App. 2005); see Montgomery, 810 S.W.2d at
390.  Because the concern is the extent to which the jury is distracted from
considering the charged offense, we hold that the time needed to develop the
extraneous-offense evidence necessarily includes any testimony introduced with
regard to the extraneous offense, including cross-examination, redirect
examination, etc. and any rebuttal offered by the defense in response to the
extraneous-offense evidence.  See Isenhower v. State, 261 S.W.3d 168, 179
(Tex. App.—Houston [14th Dist.] 2008, no pet.) (direct, cross-examination, and
redirect); Lopez v. State, 200 S.W.3d 246, 253 (Tex. App.—Houston [14th Dist.] 2006, pet. ref’d) (testimony from extraneous-offense complainant, her
father, and appellant); Blackwell, 193 S.W.3d at 18 (testimony from
extraneous-offense complainants and two police officers); Colvin v. State,
54 S.W.3d 82, 86 (Tex. App.—Texarkana 2001, no pet.) (testimony from
extraneous-offense complainant and outcry witness).  Stated another way, Newton would not have cross-examined L.D. or offered the testimony of her father, nor
would the State have offered the testimony of L.D.’s outcry witness if the
State had not called L.D. to testify.  Thus, this additional testimony must be
included when determining the time needed to develop the extraneous-offense
evidence.

            We do not include, however,
hearings conducted outside of the jury’s presence or jury argument.  See
Dennis, 178 S.W.3d at 181 n.2.

            Accordingly, the time needed
to develop the extraneous-offense evidence amounted to about 116 pages[6]
out of the 426 pages of testimony offered during the guilt-innocence phase or
about twenty-seven percent.  Viewed in terms of the number of days, the parties
presented testimony for about three and one-half days.  The extraneous-offense
evidence took up one full afternoon on the second day of testimony, all of the
following morning, about half the next afternoon, and part of the last morning.

            This factor weighs in favor
of exclusion.  See Russell v. State, 113 S.W.3d 530, 546 (Tex. App.—Fort Worth 2003, pet. ref’d) (factor weighed in favor of exclusion where
extraneous-offense evidence amounted to about 30% of testimony); Booker v.
State, 103 S.W.3d 521, 536 (Tex. App.—Fort Worth 2003, pet. ref’d) (“just
over half”); cf. Lane v. State, 933 S.W.2d 504, 520 (Tex. Crim. App. 1996)
(factor weighed in favor of admission where extraneous-offense evidence
amounted to “less than one-fifth”); Maranda v. State, 253 S.W.3d 762,
768 (Tex. App.—Amarillo 2007, no pet.) (about 10%); Prince, 192 S.W.3d at
56 (less than 10%).

            To summarize, half of the
factors we have considered weigh in favor of admission of the
extraneous-offense evidence and half weigh in favor of exclusion.  However,
Rule 403 “envisions exclusion of evidence only when there is a ‘clear
disparity between the degree of prejudice of the offered evidence and its
probative value.’”  Hammer, 2009 Tex. Crim. App. LEXIS 513, at *34 (emphasis
added) (quoting Conner, 67 S.W.3d at 202).  This rule “should be used sparingly.” 
 Id., 2009 Tex. Crim. App. LEXIS 513, at *35.  We cannot say that there
is a “clear disparity” between the danger of unfair prejudice posed by the
extraneous-offense evidence and its probative value.  Thus, we cannot say the
court abused its discretion by overruling Newton’s Rule 403 objection.

We overrule Newton’s second point and
affirm the judgment.

 

FELIPE REYNA

Justice

Before Chief
Justice Gray,

Justice
Reyna, and

Justice
Davis

(Chief
Justice Gray concurring with note)*

Affirmed

Opinion delivered
and filed August 19, 2009

Publish

[CRPM]

 

*           (As
evidenced by the number of cases cited by the Court, there is a growing trend
to simply count pages in the record to evaluate the factor of time to develop
the extraneous-offense evidence.  This is a dangerous trend and an unsatisfying
way to evaluate this factor.  The factor under review is the time “needed” to
develop the testimony.  If all we do is count pages, all the pages, it simply
encourages the defense to engage in tactics to drag out and extend the
presentation of the evidence.  Further, those pages are, for the most part,
created after the trial court made its ruling, a ruling more often based upon
the representations of counsel during a hearing on the admissibility of the
evidence.  Thus counting pages is dangerous because it tends to encourage
inappropriate behavior and allows us to second guess the trial court based upon
information not before the trial court at the time it made its ruling.  And it
is an unsatisfying way to evaluate this factor because it is an arbitrary but
objective measure of a largely subjective factor.  It is a measure of the
number of pages in a record that was taken to develop the evidence and
not necessarily a good measure of the amount of time needed to develop
the evidence.  We cannot ignore the subjective determination of how much time
was really needed versus the time taken.  I have used this measure in
evaluating this factor and do not believe it is error but felt compelled to
note some of the inherent problems with its use, particularly if this is the
only measure used to evaluate this factor.

 

            With
these comments I concur in the judgment of the Court to the extent it affirms
the trial court’s judgment.)









[1]
              Newton presented
four points on original submission.  See Newton v. State, 283 S.W.3d 361
(Tex. App.—Waco 2007), rev’d, 275 S.W.3d 490 (Tex. Crim. App. 2009) (per
curiam).  We overruled two and sustained one.  Id.  Only the State
sought review of our decision, and the Court of Criminal Appeals reversed on
the sole point we decided in Newton’s favor.  See Newton, 275 S.W.3d at
490.  Newton has filed a supplemental brief on remand narrowing his appellate
points accordingly.  See 10th
Tex. App. (Waco) Loc. R. 19 (providing for filing of supplemental briefs
upon remand from Court of Criminal Appeals).

 





[2]
              The “extraneous
offense” regarding L.D. actually entails repeated sexual abuse against L.D.
committed over several years.  The term “extraneous offense,” when used with
reference to L.D., refers to this series of extraneous offenses and not to any
particular extraneous offense.





[3]
              The Gigliobianco
“restatement” of the Montgomery factors appears to be non-substantive. 
Rather, the Montgomery factors were more closely tailored to the
language of Rule 403 by Gigliobianco. See Gigliobianco v. State,
210 S.W.3d 637, 642 n.8 (Tex. Crim. App. 2006) (“By our decision today, we do
no more than refine and build upon our previous analysis, and bring it in line
with the plain text of Rule 403.”).

 





[4]
              Newton’s complaint
focuses on unfair prejudice.  He does not contend that the admission of the
extraneous-offense evidence caused confusion of the issues or misled the jury. 
Thus, we do not address the fourth and fifth Gigliobianco factors.  See
Gigliobianco, 210 S.W.3d at 641.





[5]
              Another
consideration is whether the extraneous-offense evidence will “merely repeat
evidence already admitted” or, in other words, will constitute the “needless
presentation of cumulative evidence.”  See Tex. R. Evid. 403; Gigliobianco, 210 S.W.3d at 641-42. 
Here, the extraneous-offense evidence is not cumulative.





[6]
              According to our
calculations, this figure includes: (1) 70 pages for L.D.’s testimony (Vol. IV,
pp. 97-107; Vol. V, pp. 9-67); (2) 10 pages for the outcry witness’s testimony;
(3) 23 pages for L.D.’s father’s testimony; and (4) 13 pages of Newton’s testimony offered to rebut L.D.’s testimony.  (Vol. VI, pp. 44-49, 60-63, and
67-69).