Charlene L. PACHECO

v.

Normand BEDFORD.

No. 2000–230–Appeal.

Supreme Court of Rhode Island.

Jan. 10, 2002.

▮

Normand Bedford, for Plaintiff.

Frank J. DiBiase, Cranston, Michael Ahn, Pawtucket, for Defendant.

Present WILLIAMS, C.J., LEDERBERG, BOURCIER, FLANDERS, and GOLDBERG, JJ.

## OPINION

**PER CURIAM.**

Normand Bedford (Bedford), appeals *pro se* from the entry of a Family Court order terminating his right of visitation with his nine-year-old daughter. At the time his visitation rights were terminated, Bedford was incarcerated at the Adult Correctional Institutions (ACI) for first- and second-degree child sexual molestation. He contends here on appeal that, because of his "mental disability," the Family Court magistrate erred in failing to provide him court-appointed counsel and the Family Court Chief Judge erred in affirming the visitation termination order.

Bedford's minor child, a female, was born on May 6, 1992, to the plaintiff, Charlene L. Pacheco (Pacheco). It was not until February 1995, however, that Bedford acknowledged paternity.

In September 1995, before Bedford was incarcerated, a Family Court order had permitted him to have weekly visitation with the child on Saturdays from 10 a.m. to 6 p.m. Later, in January 1997, Bedford was arrested and charged with one count of first-degree child molestation and one count of second-degree child molestation. The victim was the daughter of his latest girlfriend. After a jury trial, he was convicted and subsequently sentenced to forty years imprisonment, with twenty years to serve and with twenty years suspended with probation. When Pacheco discovered that Bedford had been imprisoned for child molestation, she decided not to bring her daughter to the ACI to visit with him.

In March 1999, Bedford filed a motion to adjudge the plaintiff in contempt of the aforementioned visitation order. He also filed a motion for court-appointed counsel, claiming that, pursuant to 42 U.S.C. §§ 12101 through 12213, the Americans with Disabilities Act (ADA), he was entitled to court-appointed counsel because he was "mentally disabled" and unable to represent himself. Thereafter, the plaintiff filed a cross-motion to terminate the defendant's visitation rights.

After hearing and considering evidence on the motion for court-appointed counsel, a magistrate of the Family Court found that Bedford was not entitled to court-appointed counsel because the case was civil in nature and he was not facing possible incarceration from its outcome. She then referred him to the law clinic at Roger Williams University School of Law (Law School) for assistance and continued the matter. At a subsequent hearing, Bedford again argued *pro se*. He did not indicate whether he had contacted the law school or had sought counsel elsewhere. After hearing the arguments and reviewing the evidence, the magistrate denied Bedford's motion for contempt,[1] denied his motion for court-appointed counsel and granted the plaintiff's motion to terminate Bedford's visitation rights. The defendant appealed to the Chief Judge of the Family Court,[2] who affirmed the magistrate's decision. We now affirm that affirmation.

▮ "An ADA plaintiff has no absolute right to an appointed counsel. Rather the decision of whether to provide counsel lies solely within the discretion of the court." *Johnson v. City of Port Arthur*, 892 F.Supp. 835, 839 (E.D.Tex.1995). In exercising that discretion, the trial justice should consider the following factors:

---

1. This issue is not before us on appeal.

2. *See* Rule 53(e) of the Family Court Rules of Procedure for Domestic Relations.

"1. Whether the complainant has the financial ability to retain counsel;

"2. Whether the complainant has made a diligent effort to retain counsel; * * *

"3. Whether the complainant has a meritorious claim[,]" *id.* at 840; and

4. Whether the complainant "is capable of representing himself" or herself. *Tyson v. Pitt County Government,* 919 F.Supp. 205, 207 (E.D.N.C.1996). *See also Young v. K–Mart Corp.,* 911 F.Supp. 210 (E.D.Va.1996).

■ In the present case, the Chief Judge found the record to be devoid of any evidence that Bedford ever contacted Roger Williams Law School or any other counsel to seek representation. With respect to whether he was capable of representing himself, we take judicial notice of the findings made by the Chief Judge in *Andrea Smith v. Normand Bedford,* 83R–984.[3] In that case, after presenting his case to the Chief Judge, Bedford, *pro se,* raised the issue of his disability. The Chief Judge told Bedford that "You read better than a lot of the lawyers that appear before me." He also found that Bedford "speak[s] intelligently" and presumably concluded that Bedford was capable of representing himself in that case. After reviewing the hearing record before us, we do not discern that the Chief Judge abused his discretion in denying Bedford's motion for court-appointed counsel.

■ Bedford next contends that the Family Court erred in terminating his visitation rights with his daughter and questions the magistrate's and the Chief Judge's findings. Keeping in mind that

"[t]he paramount consideration in cases involving visitation rights or custody disputes is the best interests of the child," *Burrows v. Brady,* 605 A.2d 1312, 1315 (R.I.1992), "[t]his court reviews the Family Court's denial of a motion to modify a prior custody award to determine whether an abuse of discretion has occurred." *Suddes v. Spinelli,* 703 A.2d 605, 607 (R.I. 1997). "If the Family Court has properly considered what custody arrangements are in the best interests of the child[ ], we will not disturb such a discretionary decision." *Id.*

■ "Visitation rights are to be strongly favored and will be denied only in an extreme situation in which the children's physical, mental, or moral health would be endangered by contact with the parent in question." *Id.* (citing *Seravo v. Seravo,* 525 A.2d 922, 926 (R.I.1987)). Mere incarceration, standing alone, does not justify the denial of visitation rights. *See Hervieux v. Hervieux,* 603 A.2d 337, 338 (R.I.1992) (per curiam) (finding that "[a]part from the defendant's incarceration at the ACI nothing in the record indicates that cause existed which justified the trial justice's refusal to order visitation rights").

In the present case, however, there is ample evidence that the magistrate, and later the Family Court Chief Judge, did not abuse their discretion in terminating Bedford's visitation rights with his daughter. The record reveals that the magistrate listened to conflicting testimony from both parties about Bedford's involvement with, and commitment to, his daughter. In considering the child's best interests, the magistrate found that there was no

---

**3.** Bedford's appeal in *Andrea Smith v. Normand Bedford,* 83R–984 was heard on September 7, 1999. The present case was heard less than seven months later, on March 27, 2000.

significant bond between Bedford and his daughter, that the relationship was not "harmonious loving [and] consistent" and, of particular significance, was the fact that Bedford had been convicted of a crime involving the victimization of a child. After reviewing the record, we cannot say that she, and later the Family Court Chief Judge, abused their discretion in terminating Bedford's visitation rights.

Accordingly, and for the foregoing reasons, we deny and dismiss his appeal. The judgment appealed from is affirmed, and the papers in the case are remanded to the Family Court.