January 28, 2026

**Supreme Court**

No. 2024-278-Appeal.
(K 23-336M)

Richard Conway            :

v.                        :

Amanda Orenberg.          :

NOTICE:   This opinion is subject to formal revision before publication in the Rhode Island Reporter.  Readers are requested to notify the Opinion Analyst, Supreme Court of Rhode Island, 250 Benefit Street, Providence, Rhode Island 02903, at Telephone (401) 222-3258 or Email opinionanalyst@courts.ri.gov, of any typographical or other formal errors in order that corrections may be made before the opinion is published.

Richard Conway          :

v.          :

Amanda Orenberg.          :

Present: Suttell, C.J., Goldberg, Robinson, Lynch Prata, and Long, JJ.

# O P I N I O N

**Chief Justice Suttell, for the Court.**  The plaintiff, Richard Conway, appeals from three Family Court orders.  The first awards the defendant, Amanda Orenberg, primary placement of the parties' two minor children, and the second, a handwritten order, details the plaintiff's child-support obligation owed to the defendant.  Further, the plaintiff requests that this Court vacate a child-support guideline worksheet simultaneously entered as an order of the Family Court in this matter.  On appeal, the plaintiff argues that the Family Court erred in (1) failing to entertain any testimony or evidence on the issues, (2) not considering the best interests of the children, and (3) entering orders as consent orders over his objection.

This case came before the Supreme Court pursuant to an order directing the parties to appear and show cause why the issues raised in this appeal should not be summarily decided.  After considering the parties' written and oral submissions and reviewing the record, we conclude that cause has not been shown and that this case

may be decided without further briefing or argument. For the reasons set forth herein, we vacate the disputed portion of the placement order granting primary placement to the defendant, affirm the child-support guideline worksheet, and remand the case to the Family Court for further proceedings. Further, because we affirm the child-support guideline worksheet, the plaintiff's appeal of the handwritten order is moot.

# I

## Facts and Travel

The parties in the present dispute were never married; however, they cohabitated in a jointly owned home and share two minor children, born in 2017 and 2020. Their relationship began to deteriorate in September 2022, leading to their separation on or about February 6, 2023.

The legal proceedings from which this appeal arises began on January 24, 2023, at which time plaintiff filed a miscellaneous complaint in the Family Court seeking, among other relief, joint custody of their children with "placement to [f]ather" and an award of child support in compliance with state guidelines. Before responding to this suit, on February 20, 2023, defendant filed a separate complaint against Mr. Conway due to alleged abuse. In that case, the court granted Ms. Orenberg an *ex parte* temporary order for protection and awarded her temporary

custody of the children. More detailed orders concerning parenting time were subsequently entered.

On February 28, 2023, defendant filed an answer and counterclaim in response to plaintiff's initial suit. She sought sole custody and physical placement of the children, child support, and other child-related costs. After a hearing on March 27, 2023, the court ordered that the parties participate in mediation through the Family Court and continued the case, along with the companion case (the protective-order complaint filed by defendant), to a later date.

In several subsequent hearings spanning over a year, the court issued several orders. Included in such, the court appointed a guardian *ad litem* (GAL) to "investigate and make recommendations regarding custody," ordered co-parenting counseling for the parties, amended the parenting time/visitation schedule to give plaintiff more time with the children (at the GAL's recommendation), and ordered that he comply with several discovery requests concerning the production of documents relating to his income.

At a hearing on June 11, 2024, defendant agreed to dismiss her complaint for an order of protection, and the protective order from that case was incorporated into the present case. The hearing justice then asked if the parties had reached an agreement, and defendant's attorney indicated they had not. The defendant's counsel insinuated that plaintiff wanted to litigate the matter notwithstanding his

unwillingness to cooperate with discovery. Counsel noted that it was his understanding that the GAL recommended primary placement with defendant, and he additionally put forth calculations that he believed to be appropriate regarding child support.

In response, plaintiff's attorney indicated that plaintiff believed the restraining order was filed as a "crutch" to prevent plaintiff from obtaining primary placement of the children. She also raised issues relating to plaintiff's income, contending that he was on disability, making around $18,000 a year, but appeared to have had some significant real estate transactions in 2022 that defendant was using in the child-support calculations. The hearing justice noted that, throughout the pendency of the matter, there were several detailed orders put in place that had not been appealed and indicated that "[plaintiff] has to have clean hands if I'm going to be listening to any motions to change any of these orders." By the close of the hearing, the only agreement seemingly reached by the parties related to the designation of a new location for exchanging the children per the parenting time schedule.

The last hearing in this matter occurred on June 25, 2024. Four orders were entered by the court at this time, three of which are in contention on appeal. The hearing justice addressed each order separately. First, she referenced an order largely pertaining to the holiday visitation schedule of the children (the visitation order). She stated, "I do have a consent order that was signed by everyone and

presented to the [c]ourt, that I have approved and made an order of the [c]ourt [b]ased on the recommendations of the guardian, the mediator, and looking at the children's best interest." The visitation order was signed by defendant, the GAL, both parties' attorneys, and the hearing justice. It was subsequently entered as a consent order and is not challenged on appeal.

Next, the hearing justice referenced an order prepared by defendant's attorney (the placement order) that addressed a variety of issues, including a provision stating that defendant shall continue to have primary placement of the children. She indicated that "[b]y agreement of the attorneys, it may enter as an order of the [c]ourt." The plaintiff now appeals from this order. The hearing justice then noted that the court was presented with a child-support guideline worksheet that was signed by both attorneys (the child-support guideline worksheet) and was to enter as an order of the court. Lastly, she entered a handwritten order captioned "consent order" (the handwritten order). Among other things, this order purported to establish plaintiff's child-support obligation in the amount of $1,254 per month (the same amount as set forth in the child-support guideline worksheet). It also quantified an arrearage owed by plaintiff, provided for Easter visitation, required notice if either party travels out of state with the children, and memorialized that the "parties shall share joint legal custody of their minor children." The plaintiff also appeals from these two orders.

The hearing justice read the above referenced orders into the record, and, upon the court's inquiry, the GAL stated that she was in agreement with all of the orders presented to the court. She added that, "[h]aving talked to the children, talked to the counsellors, I received information from their schools, talked to the parties, this would be my recommendation, that the parties share joint custody; that the [d]efendant continue to have primary placement; and that the current schedule remain in place." The GAL also indicated that she believed this agreement was in the best interests of both children. The hearing justice then stated that all of the orders may enter.

Before the hearing concluded, plaintiff's attorney noted that she wished to put plaintiff's objection on the record, stating that plaintiff believed it was in the best interests of the children for him to have primary placement and that he also disagreed with the child-support numbers. She added, "[a]nd I know that we can deal with DHS at a later point." All orders subsequently entered, and acting *pro se*, plaintiff filed a timely notice of appeal on July 11, 2024.

## II

### Standard of Review

"On review, this Court will not disturb the findings of fact made by a justice of the Family Court with respect to the issue of custody and the best interests of the child unless the hearing justice abused his or her discretion in making such findings."

*Andrade v. Andrade*, 252 A.3d 755, 760 (R.I. 2021) (quoting *DePrete v. DePrete*, 44 A.3d 1260, 1270 (R.I. 2012)). "We will affirm the trial justice's award concerning custody and the best interests of the child unless his or her factual findings overlooked or misconceived material evidence or were clearly wrong." *Id*. (quoting *DePrete*, 44 A.3d at 1270). Further, "[i]t is well established that the appropriate award of child support is to be determined by the trial justice in his or her sound discretion, and we shall not disturb such a determination on review absent a clear abuse of that discretion." *Trojan v. Trojan*, 208 A.3d 221, 229 (R.I. 2019) (quoting *Tamayo v. Arroyo*, 15 A.3d 1031, 1035 (R.I. 2011)).

## III

### Discussion

### The Placement Order

The plaintiff assigns error to the order awarding primary placement of the minor children to defendant entered by the hearing justice on June 25, 2024. He contends that the hearing justice did not consider the factors set forth by this Court in *Pettinato v. Pettinato*, 582 A.2d 909 (R.I. 1990), make any findings of fact, and failed to properly explain her reasoning. He also asserts that he was denied "due process of law and an opportunity to be heard regarding the best interest of the children at a testimonial hearing." The defendant argues, conversely, that the hearing justice "was clear in every hearing that she was considering all the factors involved,

- 7 -

which included the [plaintiff]'s conduct throughout the proceedings, the recommendations of the [GAL], and the fact that the [defendant] had the Order of Protection from Abuse case against the [plaintiff]."

At the June 25 hearing, the hearing justice indicated that the placement order was prepared by defendant's attorney and, prior to reading it into the record, stated that "[b]y agreement of the attorneys, it may enter as an order of the [c]ourt." Notably, neither plaintiff nor his attorney signed the order; however, the hearing justice appears to have handwritten "By Agreement" above the signature line. At the close of the hearing, plaintiff's attorney stated that she wanted to put her client's objection on the record. She stated that "[plaintiff] believes it's in the best interest of the two children for him to have primary placement. * * * I also let him know that if there were a change of circumstances, that he could file for a change of placement if things change, but he is objecting to the placement order."

While we unquestionably defer to the hearing justice's findings of fact on a determination of this nature, the record here is devoid of sufficient factual findings to facilitate our review. It is well established that "the best interests of the child remain the lode-star principle for determining child custody awards." *Ayriyan v. Ayriyan*, 994 A.2d 1207, 1213 (R.I. 2010) (quoting *Berard v. Berard*, 749 A.2d 577, 579 (R.I. 2000)). We have set forth the pertinent factors in this analysis as follows:

> "[T]he trial justice should consider: (1) the wishes of the child's parents; (2) the reasonable preference of the child

- 8 -

(if he or she is of sufficient intelligence and understanding); (3) the interaction and relationship of the child to the parents; (4) the child's adjustment to his or her home, school and community; (5) the mental and physical health of the individuals involved; (6) the stability of the child's home life; (7) the moral fitness of the parents; and (8) the willingness of each parent to facilitate a close relationship between the child and the other parent. *Pettinato v. Pettinato*, 582 A.2d 909, 913-14 (R.I. 1990). No one factor is determinative; rather, the trial justice should consider a combination of and an interaction among all relevant factors. *Id.* at 914." *Waters v. Magee*, 877 A.2d 658, 664-65 (R.I. 2005) (quoting *Africano v. Castelli*, 837 A.2d 721, 728 (R.I. 2003)).

We have also made it clear that a magistrate or trial justice is not required to use specific language or explicitly "refer to the *Pettinato* factors" in their decision. *Andreozzi v. Andreozzi*, 813 A.2d 78, 83 (R.I. 2003); *see also Chiappone v. Chiappone*, 984 A.2d 32, 38 (R.I. 2009) ("The incantation of the phrase the 'best interests of the child' is not necessary, as long as the trial justice clearly articulates the basis of her decision and as long as the decision demonstrates that paramount consideration is given to the best interests of the child."). However, in discerning that there was no abuse of discretion on the part of the trial justice in both *Andreozzi* and *Chiappone*, we cited to the specific factual findings upon which their decisions were based. *See Andreozzi*, 813 A.2d at 83 (noting that the magistrate indirectly addressed the *Pettinato* factors by commenting on evidence relating to the preference of the children, the relationship between the children and parents detailed in the GAL's report, and stating that keeping the children in their home and

community environment was in their best interest); *Chiappone*, 984 A.2d at 38 (stating that the trial justice indicated that the defendant had no relationship with the children, detailed the reports of two doctors determining the needs of the children and that the defendant's absence had a negative impact on them, and summarized her *in camera* review with the children expressing their preference not to see the defendant).

Here, the record indicates that the sole evidence the hearing justice considered on the issue of primary placement was the brief oral recommendation of the GAL. While we recognize and appreciate the efforts of the GAL throughout this matter, we are constrained by the fact that the hearing justice neglected to make *any* factual findings concerning the children's best interests. We have long recognized that "[a] hearing justice must make findings of fact sufficient for this Court 'to pass upon the appropriateness of the order and the grounds upon which it rests.'" *Now Courier, LLC v. Better Carrier Corp.*, 965 A.2d 429, 434 (R.I. 2009) (quoting *Chiaradio v. Falck*, 794 A.2d 494, 496 (R.I. 2002)). Accordingly, we vacate the order insofar as it awards defendant primary placement of the children.

### Child-Support Guideline Worksheet

The plaintiff additionally requests that this Court vacate the child-support guideline worksheet entered as an order of the Family Court on June 25, 2024. He characterizes this worksheet as a consent order and contends that, despite the fact

that his lawyer "inexplicably" signed the guideline worksheet, she stated at the end of the hearing that plaintiff was in disagreement with the child-support numbers. He avers that "[t]hese contradictory actions and statements by [plaintiff]'s attorney should leave this court to question whether the child support worksheet was truly consented to by [plaintiff]'s prior attorney or was more of an acquiescence to the trial justice['s] demands to end the case." The plaintiff further contends that he "was deprived of an opportunity to present testimony and evidence concerning his income, his receipt of social security disability benefits and ability to pay child support."

A review of the transcript of the June 11, 2024 hearing helps to place this issue in context. When asked by the hearing justice whether the parties had an agreement, defendant's counsel replied, "We do not, Your Honor." With respect to child support, he elaborated, "I ran numbers for child support based on the limited information I do have and based on that calculation, [plaintiff] owes per month, $1,254 * * *." The plaintiff's counsel, who was fairly new to the case, responded that she needed "a little bit of time." She indicated that she and defendant's counsel had "been in constant communication within the last week trying to get missing discovery items."

The hearing justice's frustration is palpable. While acknowledging that counsel had entered only recently, she emphasized that there were some very detailed and specific orders in effect concerning discovery as well as setting forth a parenting schedule. The hearing justice admonished plaintiff's counsel,

"[Y]our client has to have clean hands * * *. It appears he is not cooperating with the discovery, and I could find him in contempt, and I could fine him, and I could require him to pay [defendant's] attorneys['] fees. So, I think you need to discuss with him what's going on because I'm not very happy, given the travel of the case and the fact that this discovery has not been provided. I am looking for child support orders. I do not see a child support guideline here."

The defendant's counsel then indicated that he had prepared a guideline worksheet based upon plaintiff's 1040 tax forms in 2022 and 2023, the only information that he had received. The hearing justice advised the parties that she would hold the matter to give them "a chance to consult" and "look at that worksheet." She also stated that "the child support is retroactive to [February 28, 2023], so whatever the child support is by his not paying for a year doesn't mean he is not going to pay child support." When the hearing resumed, defendant's counsel announced that the parties had reached an agreement, but that they were waiting to see if plaintiff "can produce a bank check payable to" defendant. The case was therefore continued for two weeks.

At the hearing on June 25, 2024, the hearing justice indicated that the "[c]ourt was presented with a child support guideline that has also been signed by both attorneys" in the amount of $1,254 per month. The guideline worksheet bears the signature of plaintiff's counsel, dated June 25, 2024, and defendant's counsel, dated June 11, 2024.

- 12 -

This Court has recognized that the relationship between an attorney and client is "essentially one of principal and agent." *DiLuglio v. Providence Auto Body, Inc.*, 755 A.2d 757, 766 (R.I. 2000) (quoting *State v. Cline*, 122 R.I. 297, 309, 405 A.2d 1192, 1199 (1979)).  Moreover, in explaining the nature of this relationship, we have stated:

> "[A]n attorney is an agent employed by a party to a case to manage the same for him. His contract of employment implies that the attorney is authorized to take such steps in representing his client as he may deem legal, proper and necessary, and his acts in that respect, in the absence of fraud, must be regarded as the acts of his client." *May v. Penn T.V. & Furniture Co., Inc.*, 686 A.2d 95, 99 (R.I. 1996) (quoting *Cohen v. Goldman*, 85 R.I. 434, 438, 132 A.2d 414, 416 (1957)).

"[I]n the absence of special circumstances, * * * a client is bound by the acts of his attorney of record." *Brindle v. Brindle*, 77 R.I. 90, 94, 73 A.2d 770, 771-72 (1950). As such, we are satisfied that the child-support guideline worksheet constitutes a valid order, and we find no cause to disturb the order on appeal.  However, we note that this determination does not preclude modification of the child-support calculation upon appropriate motion in the Family Court.  At the conclusion of the June 25 hearing, plaintiff's counsel stated, "I know that we can deal with DHS at a later point." *See Carpenter v. Carpenter*, 316 A.3d 1261, 1264-65 (R.I. 2024) (holding that because the defendant explicitly agreed on the record to the Family Court's order authorizing the sale of specified marital property and did not request

an evidentiary hearing on the matter, he thereafter waived his right to challenge the order).

## The Handwritten Order

The plaintiff additionally takes issue with the order handwritten by defendant's counsel, also entered on June 25, 2024. The plaintiff argues that the hearing justice erred in entering the order as a consent order because it "was not signed by the [plaintiff]'s lawyer and was objected to by the [plaintiff], on the record." The entirety of the handwritten order was read into the record. Concerning child support, the hearing justice noted, "commencing July 1st, the [p]laintiff shall pay child support in the amount of $1,254 per month" and "[c]hild support arrearage as of today's date is $7,104." At the end of the hearing, however, plaintiff's attorney stated, "[plaintiff] is also in disagreement with the child support numbers."

The order at issue contains five paragraphs. As referenced above, the first paragraph establishes plaintiff's child-support obligation in the amount of $1,254 per month. The second sets a child-support arrearage of $7,104 plus interest. The remaining three paragraphs concern joint custody, placement of the minor children on Easter, and notice requirements if either party should travel with the children overnight outside the State of Rhode Island. Thus, only the first paragraph, and perhaps the second, have any relevance to the issues currently before the Court.

In light of our affirmance of the order contained in the child-support guideline worksheet, the plaintiff's objection to the handwritten order has become moot. *See Capital Video Corporation v. Bevilacqua*, 338 A.3d 333, 337 (R.I. 2025) ("If this Court's judgment would fail to have a practical effect on the existing controversy, the question is moot, and we will not render an opinion on the matter.") (quoting *Evoqua Water Technologies LLC v. Moriarty*, 334 A.3d 429, 435 (R.I. 2025)). Both orders provide for a child-support obligation of $1,254 per month. As it appears that this arrearage figure was calculated based on the monthly obligation set forth in the child-support guideline worksheet, retroactive to February 28, 2023, it would remain the same when calculated under either order. As such, we decline to address the plaintiff's allegation of error concerning the child-support obligation set forth in the handwritten order.

## IV

### Conclusion

For the reasons set forth herein, we vacate the disputed portion of the placement order granting primary placement to the defendant, affirm the child-support guideline worksheet, and remand the case to the Family Court for further proceedings consistent with this opinion. Further, because we affirm the child-support guideline worksheet, the plaintiff's appeal of the handwritten order is moot. The record may be returned to the Family Court.

# STATE OF RHODE ISLAND

## SUPREME COURT – CLERK'S OFFICE

Licht Judicial Complex
250 Benefit Street
Providence, RI  02903



## OPINION COVER SHEET

| | |
|---|---|
| **Title of Case** | Richard Conway v. Amanda Orenberg. |
| **Case Number** | No. 2024-278-Appeal.<br>(K 23-336M) |
| **Date Opinion Filed** | January 28, 2026 |
| **Justices** | Suttell, C.J., Goldberg, Robinson, Lynch Prata, and Long, JJ. |
| **Written By** | Chief Justice Paul A. Suttell |
| **Source of Appeal** | Kent County Family Court |
| **Judicial Officer from Lower Court** | Associate Justice Laureen D'Ambra |
| **Attorney(s) on Appeal** | For Plaintiff:<br><br>David S. Slepkow, Esq.<br>For Defendant:<br><br>Crystal Abreu, Esq. |